No. 44,292

DUONE H. HANNA, *Appellant,* v. CRA, INC., *Appellee.*

(409 P. 2d 786)

Opinion filed January 22, 1966.

*Roy E. Williams,* of Kingman, argued the cause and was on the briefs for the appellant.

*Robert L. Howard,* of Wichita, argued the cause, and *George B. Powers, Carl T. Smith, John F. Eberhardt, Stuart R. Carter, Robert C. Foulston, Malcolm Miller, Robert N. Partridge, Robert M. Siefkin, Richard C. Harris, Gerald Sawatzky, Donald L. Cordes, Charles J. Woodin, Mikel L. Stout, Ronald K. Badger,* and *Benjamin C. Langel,* all of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

PARKER, C. J.: This is an appeal from a summary judgment denying an employee of an independent contractor the right to maintain an action against the principal contractor for negligent injury on the basis that the employee's exclusive remedy was under the Workmen's Compensation Act.

The limited facts before us appear in the form of a stipulation as to the record. In lieu of setting out the petition it is stipulated:

"That the Plaintiff first filed his petition in the District Court of Sedgwick County, Kansas, on June 5, 1964, for personal injuries which he received as a result of an electrical shock on June 8, 1963, in the City of Coffeyville, Kansas, at the Defendant, CRA, Inc.'s Refinery Plant, that at which time the Plaintiff was an employee of the Archie K. Lynch Construction Company of Wichita, Kansas, who had entered into a contract with the Defendant, CRA, Inc., for the construction of a metal building on the property owned by the Defendant, CRA, Inc. That during the process of the construction of said building the Plaintiff was injured by an accident arising out of and in the course of his employment with Archie K. Lynch Construction Company as a result of coming into contact with electrical wires which were located near the roof of said building, the petition sets forth the acts of negligence on the part of the Defendant, CRA, Inc., in allowing and maintaining the electrical transmission lines to be energized and located as such. The plaintiff requested judgment in the amount of $76,480.00 for his injuries and medical expenses and punitive damages in the amount of $20,000.00."

After the filing of the petition the defendant, CRA, Inc., submitted a request for admissions which resulted in the following answers:

"Plaintiff, Duone H. Hanna, answers Request for Admissions filed herein by Defendant CRA, Inc., as follows:

"1. Plaintiff admits that CRA, Inc., operates a refinery plant adjacent to the City of Coffeyville, Kansas, which plant produces lubricating oil and other products."

"2. Plaintiff admits that on the 8th day of June, 1963, the Archie K. Lynch Construction Company of Wichita, Kansas, was in the process of constructing a metal building at the site of the refinery plant adjacent to the City of Coffeyville, Kansas.

"3. Plaintiff is without knowledge or information sufficient to form a belief as to the truth of the request that the building under construction is used by CRA, Inc. for the storage of barrels, cans and packages of oil pending the sale thereof in the regular course of CRA's refining business.

"4. Plaintiff is without knowledge or information sufficient to form a belief as to the truth of the admission requested that the construction of said building was incidental to and part of the defendant's (CRA, Inc.) trade or business."

Thereafter the defendant, CRA, Inc., filed a motion for summary judgment contending that the plaintiff's exclusive remedy was under the Workmen's Compensation Act and attached to the motion was an affidavit of the president of CRA, Inc., which, omitting its formal parts, stated:

"That the CRA, Inc., operates a refinery plant adjacent to the City of Coffeyville, Kansas, which plant produces lubricating oil and other products; that on the 8th day of June, 1963, the Archie K. Lynch Constructon Co. of Wichita, Kansas was in the process of construction a metal building at the site of the refinery plant adjacent to the City of Coffeyville, Kansas.

"That the building under construction was to be used and is being used for

the storage of barrels, cans and packages of oil pending the sale thereof in the regular course of CRA's refining business."

The motion for summary judgment was presented to the trial court on oral argument and briefs.

Later that tribunal submitted the following memorandum opinion:

"The Court, after having read the briefs on the motion by the Defendant for summary judgment, is of the opinion that the Plaintiff cannot maintain this action for the reason that his exclusive remedy is under the Workmen's Compensation Act.

"Please submit Journal Entry."

Subsequently a summary judgment was entered for the defendant and the plaintiff perfected the instant appeal.

It is further stipulated in the record:

"7. That there was no evidence introduced in the above entitled case and therefore no designation of the contents of the records of any testimony that may have been introduced.

"8. That there is no question that the Archie K. Lynch Construction Company and the defendant, CRA, Inc., were at the time of this accident, operating under the Workmen's Compensation Act by virtue of sections 44-505 and 44-508 and that the plaintiff had not before his accident elected not to come within the provisions of the Kansas Workmen's Compensation Law."

The appellant contends that he was the employee of an independent contractor and that he had a right to bring the action under the provisions of K. S. A. 44-504 as the injury was caused by someone other than the employer.

The appellee admits that the appellant was the employee of an independent contractor but contends that it was also a statutory employer of the appellant under the provisions of K. S. A. 44-503.

It is a well settled rule of this court that if a workman can recover workmen's compensation under the Workmen's Compensation Act for an injury, the remedy is exclusive and he cannot maintain a common law action for damages founded on negligence against a party from whom he could have recovered compensation under the act.

Inasmuch as it is conceded that if the Workmen's Compensation Act applies to the master and servant relationship existing in this case it is by virtue of the provisions of K. S. A. 44-503, we will consider the section which, so far as here material, provides:

"(a) Where any person (in this section referred to as principal) undertakes to execute any work which is a part of his trade or business or which he has contracted to perform and contracts with any other person (in this sec-

tion referred to as the contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any workman employed in the execution of the work any compensation under this act which he would have been liable to pay if the workman had been immediately employed by him; and where compensation is claimed from or proceedings are taken against the principal, then in the application of this act, references to the principal shall be substituted for references to the employer, . . .

"( d ) This section shall not apply to any case where the accident occurred elsewhere than on, in or about the premises on which the principal has undertaken to execute work or which are otherwise under his control or management, or on, in or about the execution of such work under his control or management."

There is no contention that any of the exceptions provided by subsection ( d ) are applicable in the case at bar.

Since the appellee, as principal in this case, has undertaken to have work executed by an independent contractor the only question we have for determination is whether the work to be performed under the contract is part of the principal's "trade or business."

This court has considered the purpose of the statute. In *Hoffman v. Cudahy Packing Co.*, 161 Kan. 345, 167 P. 2d 613, we held:

"A prime purpose of section 44-503 of the workmen's compensation act is to give the employees of a contractor who has undertaken to do work which is a part of the trade or business of the principal, such remedy against the principal as would have been available if they had been employed directly by the principal, and to prevent employers from evading liability under the act by the device of contracting with outsiders to do work which they have undertaken to do as a part of their trade or business." (Syl. ¶ 4.)

Although the purpose of the act was to give the employee of a contractor a remedy against the principal, it cannot be anticipated that the legislature intended all principal contractors to be included or it would not have used the limited phrase, "which is part of his trade or business."

This court has had many occasions to consider the phrase "which is part of his trade or business." Much confusion appears to have arisen. The confusion arises largely because each case must be determined on its own particular facts and circumstances.

This court has laid down two rather definite tests by which to determine whether the work covered by a contract is part of the principal's trade or business, i. e., (1) is the work being performed by the independent contractor and the injured employee necessarily inherent in and an integral part of the principal's trade or business?

(2) is the work being performed by the independent contractor and the injured employee such as would ordinarily have been done by the employees of the principal?

If either of the foregoing questions is answered in the affirmative the work being done is part of the principal's "trade or business," and the injured employees sole remedy against the principal is under the Workmen's Compensation Act.

The first rule announced above was fully explored in *Lessley v. Kansas Power & Light Co.,* 171 Kan. 197, 231 P. 2d 239, where this court considered a situation where the principal was engaged in the production, sale and transmission of electric power contracted for the erection of a new building and the installation of steam boilers, turbines, generators and other equipment necessary and essential to the production, sale and transmission of electricity. An employee of the contractor was injured and he brought a common law action for damages. There we said:

". . . Under the decisions to which we have just referred we have little difficulty in concluding, in fact it is a matter of common knowledge, that steam boilers, turbines, generators and other equipment, as well as a building in which to house them, are a part of the *integral equipment necessary to the operation of the business* of a public utility which is engaged in the production, transmission, and sale of electricity. New buildings and new equipment whether required for replacement purposes or for increased capacity are incidents essential to the proper maintenance of such business. . . ." (p. 208.) (Emphasis supplied.)

We note some of the earlier cases approved in the *Lessley* case. See *Purkable v. Greenland Oil Co.,* 122 Kan. 720, 253 Pac. 219, where it is said:

"The company criticizes the findings of the court with respect to nature of the company's business. The criticisms need not be discussed. It is not disputed that, as the court found, the company was engaged in the business of developing land covered by oil and gas leases, and producing oil and gas therefrom. It was admitted at the trial that the company owned the lease on which the derrick stood which Hedges was erecting. It is not disputed that, as the court found, the company was engaged in drilling oil and gas wells on the lease, and was producing oil therefrom. It was admitted at the trial that the work of drilling a well to which building of the derrick was an incident, was being conducted by the company. Aside from the fact that the subject is one of common knowledge, it was a fair inference from the testimony and the admissions that, as the court found, an oil-well derrick is a part of the necessary equipment for drilling an oil well, and construction of such a derrick is a part of the business or work of drilling an oil well. The result is, the business of the company was operating for and producing oil, the work of

building the derrick was part of its business, and the accident occurred on premises on which the company had undertaken to execute work under its management and control and a part of its business." (p. 723.)

See, also, *William v. Cities Service Gas Co.*, 139, Kan. 166 30 P. 2d 97, and *Bailey v. Moseby Hotel Co.*, 160 Kan. 258, 160 P. 2d 701.

We also note *Swift v. Kelso Feed Co.*, 161 Kan. 383, 168 P. 2d 512, where it was held:

"A feed company, operating under the workmen's compensation act, as a part of its business sold and delivered feed at a delivered price which it collected from the buyer. It contracted with one who was not operating under the workmen's compensation act for the delivery of the feed on the per ton basis. An employee of the contractor sustained personal injury compensable under the workmen's compensation act. *Held*, that under G. S. 1935, 44-503, the feed company was liable under the act to the injured employee of the contractor." (Syl.)

In the later case of *Coble v. Williams*, 177 Kan. 743, 282 P. 2d 425, it is said:

"In determining whether the principal-contractor relationship existed between Williams and the Lead Company, and to whom claimant should look for compensation, the first test to be applied is, 'Whose work was being performed?' out of which the injury arose, and if such work was an *integral part or a reasonable incident of the trade or business of one person who undertook to have the work performed* for him by another, then the relationship of principal-contractor exists. (See *Bright v. Bragg*, 175 Kan. 404, 264 P. 2d 494, and cases therein cited at p. 410.). . . ." (p. 747.)

In *Durnil v. Grant* 187 Kan. 327, 356 P. 2d 872, this court placed its approval on both rules heretofore mentioned for testing whether work was part of the principal's trade or business, we said:

"The principal issue in many of the cases cited under the foregoing section of the statute is whether or not the work being performed by the contractor and his injured employee is an integral part of the business of the principal. The claimant, of course, contends there is no question that delivering produce to the retailers was an integral part of the business of the respondent.

"The applicability of the statutory employee section, 44-503 (*a*), supra, in this jurisdiction, has been determined in many decisions by inquiring whether the work involved would ordinarily have been done through employees of the principal. Thus, in Larson on Workmen's Compensation, Vol. 1, § 49.12, it is stated:

" '. . . But, with a surprising degree of harmony, the cases . . . agree upon the general rule-of-thumb that the statute covers all situations in which work is accomplished which this employer, or employers in a similar business, would ordinarily do through employees.' (p. 725.)" (p. 334.)

See, also, *Henderson v. Sutton's Food City*, 191 Kan. 145, 379 P. 2d 300.

In our most recent decision, *Hataway v. Proctor & Gamble Manufacturing Co.*, 195 Kan. 335, 405 P. 2d 350, the following statement appears:

"We are convinced that in view of what has been stated and discussed, that the Henderson case was controlling here. Insofar as the record discloses the construction of the Tide Building was not work which the manager of the Proctor and Gamble soap company would ordinarily have done through employees of the business of manufacturing soaps and detergents. It was Fruin-Colnon Contracting Company's business to construct the building for the Tide addition on the Proctor & Gamble plant and it was the latter's business to operate the Tide addition after its erection." (p. 340.)

In the *Hataway* case the court did not consider the first test heretofore mentioned for the purpose of determining whether the work covered by the contract was part of the principal's trade or business, *i. e.*, was the work being performed by the independent contractor and the injured employee necessarily inherent in and an integral part of the principal's trade or business? Perhaps the facts were not sufficient to raise the question.

It should be noted that in most of the cases in which the question now under consideration has been brought to our attention, such question was raised by demurrer, motion for judgment on the pleadings or by motion for summary judgment. The facts were necessarily limited. From the limited facts in this case the question having been presented on a motion for summary judgment, it may be possible to rule that the construction of the building in controversy was not necessarily an integral part of and inherent in the appellee's trade or business, but there is not a particle of evidence touching on the second test, *i. e.*, was the construction of the building, work such as would have ordinarily been performed by the employees of the principal, the appellee?

Motions for summary judgments should not be sustained unless all the facts which are necessary to a complete determination of the issues presented are before the trial court and there is no genuine issue of any material fact. (See *Brick v. City of Wichita*, 195 Kan. 206, 403 P. 2d 964.)

The judgment should be reversed with instructions to the district court to require the appellee to file its answer, and that the court then proceed to receive evidence as to whether the construction of

the building in controversy was a part of the appellee's trade or business under the tests set out in this opinion.

It is so ordered.

FATZER, J., concurring: The statute (K. S. A. 44-503), in defining the responsible area of CRA, Inc. in this case does not refer to "a reasonable incident of the trade or business," or whether the work being done was "such as would have ordinarily been performed by the employees of the principal," or whether it was "ancillary or incidental" or "germane and pertinent" to the principal's trade or business. It states in simple and unqualified terms, "any work which is a part of his trade or business." What was the trade or business of CRA, Inc. as disclosed by the record? One need look only to the affidavit of the president to ascertain without qualification that its trade or business was the work of operating an oil refinery to produce lubricating oil and other products. This classification does not include the work of constructing a metal building or shed on its refinery site. (*Purkable v. Greenland Oil Co.*, 122 Kan. 720, 253 Pac. 219.) Building the metal shed had nothing to do with the trade or business of CRA, Inc., and that work was no part of integral equipment necessary to operate the refinery. (*Lessley v. Kansas Power & Light Co.*, 171 Kan. 197, 231 P. 2d 239.) Moreover, it was Contractor Lynch's business to construct the metal shed and it was the trade and business of CRA, Inc. to use the building after it was constructed. (*Hataway v. Proctor & Gamble Manufacturing Co.*, 195 Kan. 335, 405 P. 2d 350.

I would reverse the judgment of the district court and direct CRA, Inc. to file its answer and proceed to trial on the question of its negligence and plaintiff's contributory negligence, if any.