Barney DIXON, Plaintiff,

v.

CERTAINTEED CORPORATION,
et al., Defendant.

Civ. A. No. 94–2310–GTV.

United States District Court,
D. Kansas.

Oct. 3, 1995.

Paul E. Serrano, Jr., Robert L. Dameron, Blake & Uhlig, P.A., Kansas City, KS, and Henri J. Watson, and Russell S. Dameron, Watson & Dameron, Kansas City, MO, for Barney Dixon.

Roger W. Warren, Kathryn A. Regier, Blackwell, Sanders, Matheny, Weary & Lombardi, Overland Park, KS, for the Certainteed Corporation.

Bernard T. Schmitt, Harris, McCausland & Schmitt, P.C., Kansas City, MO, for Precision Constructors, Inc.

Thomas R. Buchanan, McDowell, Rice & Smith, P.C., Overland Park, KS, and Joseph M. Backer, Kurlbaum, Stoll, Seaman, Reefer Suter & Mustoe, P.C., Kansas City, MO, for Henry F. Teichmann, Inc.

### *MEMORANDUM AND ORDER*

VAN BEBBER, Chief Judge.

This negligence action is before the court on the motion of defendant Certainteed Corporation ("Certainteed") for summary judgment (Doc. 41). Certainteed's motion for summary judgment is based upon its contention that it is a "statutory employer" under K.S.A. § 44–503(c), and thus plaintiff cannot

bring this common law negligence action against it because his exclusive remedy is pursuant to the Kansas Worker's Compensation Act, K.S.A. § 44–501 *et seq.* Based upon the record before the court, and for the reasons set forth below, the motion for summary judgment is denied.

## I. Background

Plaintiff, Barney Dixon ("Dixon"), filed this action alleging negligence on the part of Certainteed. In July of 1994, Dixon contends that he suffered permanent injuries when he leaned on a negligently maintained guard rail located on the mezzanine level of the KO furnace at defendant's plant that gave way causing him to fall 10–15 feet to ground level. At the time of his accident, Dixon claims that his employer was Henry F. Teichmann, Inc. ("Teichmann"). Teichmann was an independent contractor under contract with Certainteed, and Dixon was performing duties pursuant to this contract.

Certainteed claims an absolute defense to Dixon's action. Defendant contends that Kansas' worker's compensation law bars Dixon from maintaining the negligence action because Certainteed qualifies as plaintiff's "statutory employer." Although Teichmann employed Dixon to work at Certainteed's plant, defendant argues that the work plaintiff performed was within the scope of K.S.A. § 44–503(a) because it was part of Certainteed's principal trade or business. Certainteed contends that because of plaintiff's status as a "statutory employee," his exclusive remedy for any injuries sustained at defendant's plant falls under § 44–501(b) of the Worker's Compensation Act.

## II. Motion for Summary Judgment

■ Certainteed moves for summary judgment on plaintiff's complaint that seeks to recover for injuries allegedly sustained at defendant's plant. Although Dixon was an employee of an independent contractor hired to perform work at Certainteed's Kansas City, Kansas plant, defendant contends that the furnace rebuild project the plaintiff was working on is an inherent, integral part of Certainteed's trade or business. As a result, defendant argues that under K.S.A. § 44–503(a) it is a "principal," and, therefore, since Certainteed has employer status, plaintiff's

recovery is limited to the compensation provided in the Kansas Worker's Compensation Act. K.S.A. § 44–501(b).

Dixon opposes summary judgment on the ground that there is a genuine issue of material fact as to whether Certainteed qualifies for "statutory employer" protection. The court notes that Dixon has not moved for summary judgment seeking a determination that he is not a "statutory employee." Dixon contends that even if the KO furnace is an indispensable, integral part of Certainteed's fiberglass insulation production facility, the actual physical demolition and rebuilding of the furnace does not constitute a portion of defendant's normal trade or business, and, therefore, falls outside of the scope of activity encompassed by K.S.A. § 44–503(a). Consequently, plaintiff asserts that, as a matter of law, he can maintain his negligence claim against Certainteed regardless of the prohibitions contained in the Worker's Compensation Act.

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The court must examine the factual record and reasonable inferences therefrom in a light most favorable to the party who opposes summary judgment. *Applied Genetics Int'l Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990).

Certainteed, as the moving party, has the initial burden to show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the moving party meets this burden, the burden shifts to the plaintiff to identify specific facts that show the existence of a genuine issue of material fact. *Bacchus Indus., Inc. v. Arvin Indus., Inc.,* 939 F.2d 887, 891 (10th Cir.1991). The court examines only the uncontroverted facts or, if controverted, must view them in the light most favorable to Dixon, the nonmoving party. *First Affiliated,* 912 F.2d at 1241.

■ The defendant advances only one issue—whether a "statutory" employer/employee relationship existed between Certainteed and Dixon. Under the Kansas Worker's Compensation Act, an injured worker who is eligible for benefits from an employer under the Act cannot recover damages from that employer for common law negligence. *Murphy v. Owens–Corning Fiberglas Corp.*, 643 F.Supp. 269 (D.Kan.1986) (citing *Zehring v. Wickham*, 232 Kan. 704, 658 P.2d 1004 (1983)).

■ To qualify as a "statutory employer," K.S.A. § 44–503(a) requires Certainteed to establish that the work Dixon performed on the KO furnace rebuild project in July 1994 was part of Certainteed's normal trade or business. The court must decide whether Dixon's participation in the furnace rebuild project was: (1) "necessarily inherent in and an integral part of the principal's trade or business;" or (2) the type of work normally performed by Certainteed's own employees. *Hanna v. CRA, Inc.*, 196 Kan. 156, 409 P.2d 786, 789 (1966). An affirmative ruling by the court on either prong of the *Hanna* test entitles Certainteed to "statutory employer" protection. *Id.*

First, Certainteed argues that summary judgment is appropriate because its offer of uncontroverted facts establish that the work Dixon and Teichmann performed was inherent in, and an integral part of, defendant's trade or business. In *Bright v. Cargill, Inc.*, 251 Kan. 387, 837 P.2d 348 (1992), the Kansas Supreme Court narrowed the type of work that constitutes an inherent and integral part of a "statutory employer's" business. *Id.* 837 P.2d at 358 (inquiry centers on whether other "similar" businesses would perform the work in-house, or have independent contractors undertake the project). Even if a "similar" business would not undertake the furnace rebuild project in-house, *Bright* still permits "statutory employer" protection if Certainteed is "accustomed to carrying on a more or less ongoing program of construction, replacement, and maintenance ... or [ ] can be shown to have handled its own construction in the past...." Id. (quoting 1C Larson,

Workmen's Compensation Law § 49.16(j), pp. 9–105 to 9–106 (1991)).

Certainteed offers several facts in an attempt to demonstrate that it employs an in-house "construction division" as part of its normal business operation. According to Certainteed, its employees had responsibility for an on-going maintenance and repair program for the production line equipment. Furnace repairmen, maintenance employees, a technology group, process engineers and regular employees performed various tasks surrounding the repair or rebuilding of the KO furnace.

Defendant offers additional facts that attempt to demonstrate the various duties and responsibilities of Certainteed's in-house staff. Outside of routine maintenance and repair, Certainteed asserts that it provided materials, equipment and employees to complete major repair work on the KO furnace in question during the campaign [1] immediately preceding the 1994 rebuild project. Finally, Certainteed references the record regarding its history of in-plant rebuilding of furnaces prior to the August 1994 rebuild project to support its contention that its practices are consistent with the practices of other businesses similarly situated in the fiberglass manufacturing industry.

Dixon attempts to controvert the characterization of Certainteed's in-house maintenance and repair staff as a "construction division" by refuting the nature and scope of Certainteed employees' duties and responsibilities concerning the repair and rebuilding of the KO furnace. Plaintiff provides support in the record to advance its position that any substantial repair or rebuilding work on the KO furnace was handled by outside contractors, rather than an in-house staff. Dixon also cites the record to support its proposition that Certainteed did not have the materials, equipment or manpower to handle major repair work, or the KO furnace rebuilds. Additionally, plaintiff provides documentary evidence that similarly situated companies would not attempt to rebuild furnaces similar to the KO furnace in-house.

---

1. The time period between rebuilds on the KO furnace is referred to as a "campaign." Generally, the campaign for a KO furnace is four to five years.

Based on the foregoing analysis, the court finds that Certainteed has not met its burden of establishing the absence of a genuine issue of material fact regarding the existence of an in-house "construction division" or how similarly situated businesses might handle KO furnace rebuilds. *Bright*, 837 P.2d at 359. Determination of the amount and type of work performed by Certainteed's various in-house groups turns on the weight and credibility given to various witness testimony, and, therefore, must be viewed in a light most favorable to plaintiff. A factual dispute exists concerning the level of in-house work that Certainteed performed during the repair and rebuilding of the KO furnace. Consequently, a genuine issue of material fact remains as to whether the work performed by Dixon and Teichmann on the KO furnace rebuild project was "inherent in and an integral part" of Certainteed's business. The court cannot state, as a matter of law, that defendant maintained an in-house division responsible for furnace rebuilding.

The second prong of the *Hanna* test focuses on the actual work normally performed by the individual business. Under this prong, the issue is whether the work executed by Dixon and Teichmann is of the type that would ordinarily have been done by Certainteed's employees. *Hanna*, 409 P.2d at 789.

In essence, Certainteed contends that it operated as the general contractor on the 1994 KO furnace rebuild project. Defendant states that the overall furnace rebuild in July of 1994 involved several groups of independent contractors who worked side by side with Certainteed's employees to "repair, rebuild, refurbish, upgrade and replace various production line components"—including the KO furnace. With regard to the actual KO furnace rebuild, Certainteed attempts to establish that its employees worked on "virtually every aspect of the project from the preparation stages to the final reheating stage." Certainteed states that a lack of manpower was the only reason it did not complete the rebuilding project in-house.

Plaintiff attempts to controvert by showing the absence of Certainteed's overall involvement in the furnace rebuild project. Dixon asserts through deposition testimony that, except for the installation of platinum, defendant's employees had no actual responsibilities in the furnace rebuild project. There is further support in the record which indicates that Certainteed hired outside contractors to: (1) do the initial glass draining; (2) demolish the old furnace; (3) construct the new furnace; and (4) heat-up the rebuild furnace.

Viewing the facts in a light most favorable to Dixon, Certainteed fails the second prong of the *Hanna* test. A genuine issue of material fact remains as to whether the work performed by Dixon was of the type that Certainteed would normally handle in-house. Even if Dixon did not controvert each and every fact, the court finds a substantial issue regarding the weight and credibility to be given the evidence. Therefore, summary judgment is inappropriate for this prong of the *Hanna* test.

The court finds that the plaintiff has established a genuine issue of material fact concerning the nature and extent of Certainteed's general involvement in furnace rebuilding and construction—in particular, the KO furnace. Also, a genuine issue of material fact remains concerning how similarly situated businesses handle the rebuilding of fiberglass manufacturing furnaces. A sufficient factual dispute exists under both prongs of the *Hanna* test as to whether Certainteed acquired the status of employer under K.S.A. § 44–503(a). These issues remain for trial. The court cannot conclude, as a matter of law, that defendant is entitled to summary judgment on this issue.

IT IS, THEREFORE, BY THE COURT ORDERED that Certainteed's motion for summary judgment is denied.

**IT IS SO ORDERED.**