**John Greg ASCANIO, Plaintiff,**

v.

**ALLIEDSIGNAL, INC., Defendant.**

**No. 97–2147–JWL.**

United States District Court,
D. Kansas.

Jan. 28, 1998.

Fred Spigarelli, Spigarelli, McLane & Short, Pittsburg, KS, for Plaintiff.

Jeffrey E. Goering, Triplett, Woolf & Garretson, Wichita, KS, for Defendant.

### *MEMORANDUM AND ORDER*

LUNGSTRUM, District Judge.

In this diversity case, plaintiff suffered injuries while working for his employer, an electrical contractor hired to do work at defendant's chemical plant. Plaintiff obtained workers compensation benefits from his employer's insurer and now asserts common law negligence claims against defendant. The case is presently before the court on defendant's motion for summary judgment (Doc. 21). For the reasons set forth below, defendant's motion is denied.

### I.  Background [1]

In 1993, AlliedSignal acquired a chemical plant near Galena, Kansas. The age and condition of the fixtures and operating equipment inside the plant necessitated an exten-

---

**1.** In accordance with the applicable summary judgment standard, the facts are uncontroverted or related in the light most favorable to the plaintiff.

sive capital improvement effort. AlliedSignal employed Fagan Electric, Inc. (Fagan), an electrical contracting company, to assist in this effort. Fagan had also provided work "for a number of years" for Koch Chemical, the predecessor in ownership of the plant. From 1993 until February of 1995, AlliedSignal assigned the contracted electrical work necessary for the capital improvement effort exclusively to Fagan. In 1992 or 1993, plaintiff began working for Fagan as a journeyman electrician.

At the time of plaintiff's alleged injury, AlliedSignal was manufacturing a chemical known as manganese sulfate monohydrate in a building known as Plant 0. On approximately February 6, 1995, AlliedSignal and Fagan agreed Fagan would help with the installation of a new agitator in plant 0. Plaintiff was assigned to the task, and suffered ill effects from his exposure to manganese sulfate monohydrate dust. Plaintiff filed a successful workers compensation claim and received benefits from Fagan's workers compensation insurer.

Plaintiff now seeks damages from AlliedSignal for negligently causing his injuries. AlliedSignal moves for summary judgment, claiming that Kansas workers compensation law precludes plaintiff's action.

## II. Summary Judgment Standard

When considering a motion for summary judgment, the court must examine all of the evidence in the light most favorable to the nonmoving party. *Jones v. Unisys Corp.*, 54 F.3d 624, 628 (10th Cir.1995). A moving party that also bears the burden of proof at trial is entitled to summary judgment only when the evidence indicates that no genuine issue of material fact exists. Fed.R.Civ.P. 56(c); *Anglemyer v. Hamilton County Hosp.*, 58 F.3d 533, 536 (10th Cir.1995). If the moving party does not bear the burden of proof at trial, it must show "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the movant meets these requirements, the burden shifts to the party resisting the motion to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The nonmovant may not merely rest on the pleadings to meet this burden. *Id.* Genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250. Summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed. R.Civ.P. 1).

## III. Discussion

Kansas workers compensation law provides a statutory mechanism whereby covered employers are immune from suit for the job-related personal injuries of their workers. K.S.A. § 44–501(b) provides: "Except as provided in the workers compensation act, no employer ... shall be liable for any injury for which compensation is recoverable under the workers compensation act." The law applies not only to traditional employers, but to some individuals or entities who are not the immediate employers of the injured worker:

Where any person (in this section referred to as principal) undertakes to execute any work which is a part of his trade or business ... and contracts with any other person (in this section referred to as the contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any worker employed in the execution of the work any compensation under the workers compensation act which the principal would have been liable to pay if that worker had been immediately employed by the principal; and where compensation is claimed from or proceedings are taken against the principal, then in the application of the workers compensation act, references to the principal shall be substituted for references to the employer ....

K.S.A. § 44–503(a); *Hollingsworth v. Fehrs Equip. Co.*, 240 Kan. 398, 402, 729 P.2d 1214

(1986). The Kansas Supreme Court has observed that a principal purpose of section 44–503(a) is "to prevent employers from evading liability under the act by the device of contracting with outsiders to do work which they have undertaken to do as a part of their trade or business." *Bright v. Cargill, Inc.*, 251 Kan. 387, 393, 837 P.2d 348 (1992) (quoting *Zehring v. Wickham*, 232 Kan. 704, 706, 658 P.2d 1004 (1983)). The statutory provisions are to be "liberally construed for the purpose of bringing a worker under the Act whether or not desirable for the specific individual's circumstances," *Bright*, 251 Kan. at 393, 837 P.2d 348 (citing *Zehring*, 232 Kan. at 709, 658 P.2d 1004,) but they must also be "applied impartially to both employers and employees." *Bright*, 251 Kan. at 393, 837 P.2d 348 (citing K.S.A. § 44–501(g)).

In *Hanna v. CRA, Inc.*, 196 Kan. 156, 159–60, 409 P.2d 786 (1966), the Kansas Supreme Court set out the definitive test to determine whether the work which gave rise to the worker's injury was a part of the principal's "trade or business" under section 44–503(a):

> (1) [I]s the work being performed by the independent contractor and the injured employee necessarily inherent in and an integral part of the principal's trade or business? (2) is the work being performed by the independent contractor and the injured employee such as would ordinarily have been done by the employees of the principal?
>
> If either of the foregoing questions is answered in the affirmative the work being done is part of the principal's "trade or business," and the injured employees sole remedy against the principal is under the Workmen's Compensation Act.

AlliedSignal contends that the uncontroverted evidence in this case compels a conclusion under both *Hanna* tests that plaintiff was engaged in AlliedSignal's trade or business pursuant to section 44–503(a). The court disagrees because it believes plaintiff has demonstrated a genuine issue of material fact concerning each *Hanna* test.

### A. The First *Hanna* Test

The Kansas Supreme Court explained how to apply the first *Hanna* test in *Bright v.*

*Cargill, Inc.*, 251 Kan. 387, 396–399, 837 P.2d 348 (1992). *Bright* endorsed the rationale expressed by Larson's treatise on workers compensation:

> In some of the closer cases, which in the abstract look as though they might be decided either way, the courts rely heavily upon evidence of the past practice of this employer and employers in a similar business . . . .
>
> [T]he test is not one of whether the subcontractor's activity is useful, necessary, or even absolutely indispensable to the statutory employer's business, since, after all, this could be said of practically any repair, construction, or transportation service. The test (except in cases where the work is obviously a subcontracted fraction of a main contract) is *whether this indispensable activity is, in that business, normally carried on through employees rather than independent contractors.*
>
> . . .
>
> *Ordinarily construction work*, such as building a factory structure, installing a conveyor system, [moving laboratory equipment, putting in new partitions, *making electrical installations,* road widening excavating, replacing a heating system, inspecting elevators, changing pipes, putting in a septic tank, bricking up the windows, replacing the floor, building a fence, building a canopy for a small grocery store, or replacing shoe racks] *would be considered outside the trade or business of a manufacturing* or mercantile *establishment. But if the defendant is a business which by its size and nature is accustomed to carrying on a more or less ongoing program of construction, replacement, maintenance,* perhaps even having a "construction division," or which can be shown to have handled its own construction in the past, *a job of construction delegated to a contractor will be brought within the statute.*

*Id.* at 398–99, 837 P.2d 348 (emphasis added). The court when on to hold:

> The first test of *Hanna,* whether the work is inherent in and an integral part of the principal's trade or business, *asks what*

*other similar businesses do....* Overlap with the second test of *Hanna* ... may occur. Even if other businesses would not perform the work through employees, the particular principal may make such work "a part of its trade or business" by its own past actions.

*Id.* (emphasis added) (citing 1C Larson, *Workmen's Compensation Law,* §§ 49.16(c, j) (1991)).

■ AlliedSignal has presented no evidence concerning "what other similar businesses do." Instead, it claims the work plaintiff was doing was "necessarily inherent in and an integral part of [its] trade or business" because it is a business "which by its size and nature is accustomed to carrying on a more or less ongoing program of construction, replacement, and maintenance," and that plaintiff was merely a part of that ongoing program. AlliedSignal points to uncontroverted evidence that the work plaintiff was doing was part of an ongoing capital improvement effort to modernize the equipment and fixtures at AlliedSignal's plant. All of the electrical contracting work for this effort was assigned exclusively to Fagan. For about two years, four to six Fagan employees were involved daily in various projects at the plant. Fagan had a trailer parked at the plant continuously for about two years in which Fagan employees took breaks and stored their tools.

Plaintiff contends AlliedSignal's ongoing capital improvement program was necessary only because of the state of disrepair the plant was in when AlliedSignal purchased it. Plaintiff presents evidence the work was done only to bring the plant "up to stature" and that Fagan's presence at the plant, at least in its capacity as a contractor for capital improvement work, was only temporary. Plaintiff also presents evidence that AlliedSignal's employees were responsible for the day-to-day electrical maintenance and repair work, whereas Fagan employees were responsible for the capital improvement work and any maintenance work which AlliedSignal's maintenance team could not do or did

not have time to do.[2] AlliedSignal had over one hundred employees at the plant, but only two of its employees were electricians or performed electrical maintenance work. The precise work plaintiff was doing when he was injured, plaintiff contends, was work that AlliedSignal employees were incapable of performing.

Plaintiff has demonstrated genuine issues of material fact precluding summary judgment. A reasonable jury could conclude from plaintiff's evidence that Fagan's presence at the plant was only temporary and that plaintiff's "ongoing capital improvement effort" was necessitated only by the plant's state of disrepair. The jury could conclude that once the plant was brought "up to stature," the capital improvement work by Fagan would no longer be needed. Moreover, the jury could conclude from plaintiff's evidence that AlliedSignal was not, "by its size and nature, accustomed to carrying on a more or less ongoing program of construction, replacement, and maintenance." Accordingly, defendant is not entitled to summary judgment under the first *Hanna* test.

The Larson treatise's discussion of how courts should treat paint contractors supports the court's conclusion:

> Thus painting houses for an oil-drilling corporation, or smoke stacks for a factory once a year, or a town's water tank, or the interior of a theater for a chain-theater owner is not for present purposes part of the employer's business. But the result would logically be *contra* when, for example, a large hotel or realty company is accustomed to repainting and redecorating its properties regularly.

1C Larson, *Workmen's Compensation Law,* § 46.19(d) (1995). Viewed in the light most favorable to the plaintiff, the facts before the court suggest that the capital improvement project at which plaintiff was injured falls somewhere between the two extremes noted in the example. Plaintiff was installing a new agitator in plant 0. The agitator was intended to increase production in plant 0. There is no evidence that defendant engaged

---

**2.** The parties agree that plaintiff's injury occurred while he was doing capital improvement work and not maintenance work.

in a regular, recurring program of installing new agitators in its plants, but there is evidence the defendant was in the midst of a major capital improvement effort at its place of business. This case presents a perfect example of a triable issue of fact precluding summary judgment.

Moreover, the court believes it is impossible to distinguish this case from *Bright* in any cogent way. In *Bright,* the Kansas Supreme Court held that an injured plaintiff had demonstrated genuine issues of material fact sufficient to preclude summary judgment in favor of his purported statutory employer, Cargill. *Id.* at 399, 837 P.2d 348. Like AlliedSignal here, Cargill argued it was entitled to statutory employer status because the work the plaintiff was doing was "inherent in and an integral part" of its trade or business. *Id.* Like AlliedSignal, Cargill did not present any evidence concerning the practices of similar businesses. *Id.* Like the case here, plaintiff presented evidence that the work at which he was injured was a temporary capital improvement project and that the work was necessary only because Cargill's facility was outdated. *Id.* Like the case here, plaintiff presented evidence that Cargill's employees did not have the tools or expertise to perform the precise work plaintiff was injured while doing. *Id.* at 395, 837 P.2d 348. The court believes that *Bright* compels the denial of summary judgment here.

Defendant's arguments for summary judgment focus primarily on pre-*Bright* caselaw. For example, defendant argues that the uncontroverted facts here compel the court to grant summary judgment in light of the pre-*Bright* decisions of *Lessley v. Kansas Power & Light Co.,* 171 Kan. 197, 208, 231 P.2d 239 (1951) and *Zehring v. Wickham,* 232 Kan. 704, 709, 658 P.2d 1004 (1983). In *Bright,* however, the Kansas Supreme Court exhaustively reviewed its prior section 44–503(a) caselaw (including *Lessley* and *Zehring*) and concluded that "[t]he K.S.A. 44–503(a) tapestry we have judicially woven over the past 65 years does not present the earnest viewer with an easily recognizable pattern for statutory employer identification." Instead of relying on prior caselaw, the court identified the above quoted rationale to guide future courts and noted, "We disapprove of our prior decisions to the extent that they conflict with the analysis of the *Hanna* tests set out in this opinion." *Id.* at 399. Accordingly, to the extent defendant's arguments conflict with the court's analysis of the first *Hanna* test as set out in *Bright,* they are unpersuasive here.

The court's holding today is consistent with *Leister v. Schwans Sales Enterprises, Inc.,* No. 92–2227–JWL, 1993 WL 105132 (D.Kan. March 4, 1993). In *Leister,* this court granted summary judgment to Tony's Pizza Service (Tony's), the purported statutory employer of an injured worker. *Id.* at *5. Tony's uncontroverted evidence was that the injured plaintiff was working for a contractor hired to install a chain link safety fence around some robots that had been installed at Tony's facility. *Id.* at *3. Tony's presented evidence that it employed 282 people in its engineering, fabrication, and maintenance departments. *Id.* During the twenty year period prior to the plaintiff's injury, Tony's engaged in ongoing expansion, alteration, and modification of its facility, including hundreds of construction projects. *Id.* Of all the safety equipment installed around machinery in the facility, ninety to ninety-five percent was installed by Tony's employees. *Id.* Unlike AlliedSignal's evidence here, Tony's uncontroverted evidence demonstrated that it was a business "which by its size and nature [was] accustomed to carrying on a more or less ongoing program of construction, replacement, and maintenance" and that, therefore, the activity at which plaintiff was injured "was an inherent and integral part of the defendant's business, as defined in the first *Hanna* test." *Id.* at *4. Summary judgment here is not appropriate even though it was appropriate in *Leister.*

**B. The Second *Hanna* Test**

■ The second *Hanna* test looks at whether the work being performed by the plaintiff would ordinarily have been done by employees of AlliedSignal. Plaintiff has submitted a sworn affidavit that AlliedSignal had "only two (2) electricians . . . in its workforce during 1994–1995, and their expertise was in troubleshooting the equipment and calibrating the instruments at Defendant's . . . plant,

not in performing electrical construction work such as Fagan employees were performing." The affidavit also states that "the Defendant did not have the equipment ... required to perform the electrical construction work being performed by Fagan Electric employees at the ... plant" and that "the Defendant's two (2) electricians were not qualified to perform the electrical construction work being performed by Fagan Electric employees."

Plaintiff has clearly demonstrated a genuine issue of material fact concerning whether the work at which plaintiff was injured would or could have ordinarily been done by Allied-Signal employees. Plaintiff's evidence precludes summary judgment here.

**IT IS THEREFORE ORDERED BY THE COURT** that defendant's motion for summary judgment (Doc. 21) is denied.

**IT IS SO ORDERED.**