Alice E. PRICE, next friend of minor, Alexandria F. Price, individually and as personal representative for the estate of Charles Edward Price, Plaintiffs,

v.

**WESTERN RESOURCES, INC., Defendant.**

No. CIV. A. 98–2276–GTV.

United States District Court, D. Kansas.

May 10, 1999.

Dale E. Bennett, Law Offices of Dale Bennett, Overland Park, Daryl K Bredemeier, Independence, MO, Mark J. Bredemeier, Lee's Summit, MO, for plaintiffs.

William E. Hanna, Morrison & Hecker L.L.P., Kansas City, MO, T.L. Green, Western Resources, Inc., Topeka, John C. Nettels, Jr., Morrison & Hecker L.L.P., Wichita, James J. Roddy, Piland & Magruder, Kansas City, MO, for defendant.

## *MEMORANDUM AND ORDER*

VANBEBBER, District Judge.

This survival and wrongful death action arises out of an explosion at defendant

Western Resources, Inc.'s Lawrence Energy Center near Lawrence, Kansas, which resulted in the death of Charles Edward Price. The case is before the court on defendant Western Resources, Inc.'s motion for summary judgment (Doc. 17). Defendant argues that plaintiffs' action is barred by the exclusive remedy provision of the Kansas Workers Compensation Act. For the reasons set forth in this memorandum and order, defendant's motion is granted.[1]

## I. FACTUAL BACKGROUND

### A. Fed.R.Civ.P. Rule 56(f)

■ Prior to setting out the relevant facts, the court will address plaintiffs' contention that ruling on the instant motion for summary judgment is premature because discovery has not been completed. Specifically, plaintiffs argue that further discovery is needed because defendant failed to fully respond to various interrogatories, and because all the relevant evidence is in the exclusive control of Western Resources.

■ Although plaintiffs fail to cite the rule, the court construes plaintiffs' argument as one under Rule 56(f). Rule 56(f) allows a court to continue a motion for summary judgment or order further discovery upon a showing "that the [nonmoving] party cannot for reasons stated present by affidavit facts essential to justify the party's opposition." Rule 56(f) is not "invoked by the mere assertion that discovery is incomplete or that specific facts necessary to oppose summary judgment are unavailable." *Pasternak v. Lear Petroleum Exploration, Inc.*, 790 F.2d 828,

833 (10th Cir.1986). The nonmoving party must state with specificity how the additional time would enable it to obtain evidence to oppose the motion for summary judgment. *See Jensen v. Redevelopment Agency*, 998 F.2d 1550, 1554 (10th Cir. 1993).

■ The Tenth Circuit has stated that [a] prerequisite to granting relief [pursuant to Rule 56(f) ] ... is an affidavit furnished by the nonmovant. Although the affidavit need not contain evidentiary facts, it must explain why facts precluding summary judgment cannot be presented. This includes identifying the probable facts not available and what steps have been taken to obtain these facts. In this circuit, the nonmovant also must explain "how additional time will enable him to rebut movant's allegations of no genuine issue of fact."

*Committee for the First Amendment v. Campbell*, 962 F.2d 1517, 1522 (10th Cir. 1992) (citations omitted). "The purpose of the affidavit is to ensure that the nonmoving party is invoking the protections of Rule 56(f) in good faith and to afford the trial court the showing necessary to assess the merit of a party's opposition." *Id.* Rather than filing an affidavit, plaintiffs request a continuance and further discovery in the body of their summary judgment motion. An "unverified assertion in a memorandum opposing summary judgment does not comply with Rule 56(f) and results in a waiver." *Id.* The court, therefore, will not defer its ruling, and will address the merits of Western Resources' motion for summary judgment.

### B. Facts

The following facts are either uncontroverted, or if controverted, are construed in the light most favorable to plaintiffs.[2] *See*

---

1. Plaintiffs request oral argument on the instant motion for summary judgment. Because the court finds that oral argument would not be of material assistance in the resolution of the motion, the request is denied.

2. The court notes that plaintiffs' memorandum in opposition to defendant's motion for

summary judgment does not comport with D. Kan. Rule 56.1. Specifically, plaintiffs' memorandum in opposition does not begin with a statement of facts referring with particularity to Western Resources' facts that are disputed. Nevertheless, the court has endeavored to identify which facts proffered by plaintiffs controvert facts offered by defendant. Defendant's facts which the court concludes are not

*Applied Genetics Int'l Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990). Immaterial facts and factual averments not properly supported by the record are omitted.

Defendant Western Resources, Inc. is a Kansas corporation engaged in the production, purchase, transmission, and sale of electricity. As its needs dictated, Western Resources contracted with ABB Services, Inc. to perform "specialized technical electrical services" at its Lawrence Energy Center near Lawrence, Kansas. All work performed by ABB Service was as an independent contractor. At all relevant times, Charles Price was a field service engineer and district manager employed by ABB Services.

On the evening of November 23, 1997, Western Resources attempted to restart the Lawrence Energy Center's Unit No. 5 after a scheduled two-week maintenance outage. Repeated attempts to start the unit failed due to a malfunction in the unit's 501 main station switchgear.[3] Employees of Western Resources investigated the problem and determined that one of the main circuit breakers—referred to in the record as the 501 main circuit breaker—inside the switchgear was tripping and shutting down the unit. At 7:00 a.m. on November 24, Terry Scarlett, an electrical maintenance supervisor for Western Resources, called Price and requested that he come to the Lawrence Energy Center to look at the breaker. Scarlett believed that Price could be of assistance to the repair effort because Price had recently overhauled the 501 main circuit breaker. Price arrived at 9:00 a.m. According to Scarlett's deposition, Price worked throughout the day with various members of Western Resources' Electrical Maintenance Department to "troubleshoot" and determine why the circuit breaker was tripping. At approximately 4:40 p.m., Price was working on the malfunctioning switchgear alongside Ron Guy and Duane Tenpenny, both members of Western Resources' Electrical Maintenance Department. The switchgear exploded, killing Ron Guy instantly and critically injuring Duane Tenpenny and Price. Tenpenny and Price subsequently died of their injuries.

At the time of the accident, Western Resources' Electrical Maintenance Department at the Lawrence Energy Center consisted of nine electricians. The troubleshooting and repair activities performed by Price, while labeled as "specialized electrical services," were normally carried out by members of Western Resources' Electrical Maintenance Department. It is undisputed that employees of Western Resources attempted to fix the faulty switchgear before Price's arrival, and had Price not been available to render his services on November 24, 1997, these same employees would have continued to repair the switchgear without him.

It is likewise undisputed that the repair and maintenance of switchgears and circuit breakers in an electrical power plant are necessary and integral parts of an electrical power plant's business of providing electricity. David Phelps, Western Resources' Director of Coal Fired Plants, testified by affidavit that Price's assistance in providing advice on how to repair the malfunctioning circuit breaker was "necessary to, inherent in, and an integral part of, the operations of Western's business, which is the production, transmission and sale of electricity."

## II. SUMMARY JUDGMENT STANDARDS

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving par-

---

controverted by plaintiffs will be deemed admitted for purposes of the instant motion. *See* D. Kan. Rule 56.1.

**3.** A switchgear is a high voltage, high current electrical mechanism used to open and close electrical circuits and feed electrical power to equipment used to generate electricity.

ty is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). One of the principal purposes of summary judgment is to isolate and dispose of factually unsupportable claims or defenses, and Rule 56 should be interpreted in a way that accomplishes this purpose. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The court's proper inquiry is whether there is a need for a trial; in other words, whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be discharged by "showing" that there is an absence of evidence to support the nonmoving party's case. *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Thus, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *See id.*

## III. DISCUSSION

Plaintiffs argue that summary judgment should not be granted because Western Resources was not Price's statutory employer as defined by the Kansas Workers Compensation Act, or in the alternative, because the Kansas Workers Compensation Act is unconstitutional.

### A. Statutory Employer Issue

■ The first issue before the court is whether Price was a statutory employee of Western Resources pursuant to K.S.A. § 44–503(a).[4] K.S.A. § 44–503(a) extends the application of the Kansas Workers Compensation Act to individuals or entities, who are not the immediate employer of the injured worker, by deeming them statutory employers. *See Hollingsworth v. Fehrs Equip. Co.,* 240 Kan. 398, 402, 729 P.2d 1214 (1986). Pursuant to K.S.A. 44–501(b)[5], a statutory employer is neither liable for any injury "for which compensation is recoverable under the workers compensation act," nor liable "to any third party for any injury or death of an employee which was caused under circumstances creating a legal liability against a third party and for which workers compensation is payable by such employer." If Western Resources is found to be Price's statutory

4. K.S.A. § 44–503(a) provides:

Subcontracting. (a) Where any person (in this section referred to as principal) undertakes to execute any work which is a part of his trade or business or which he has contracted to perform and contracts with any other person (in this section referred to as the contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay to any workman employed in the execution of the work any compensation under the workmen's compensation act which he would have been liable to pay if that workman had been immediately employed by him; and where compensation is claimed from or proceedings are taken against the principal, then in the application of the workmen's

compensation act, references to the principal shall be substituted for references to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the workman under the employer by whom he is immediately employed.

5. K.S.A. § 44–501(b) provides:

Except as provided in the workers compensation act, no employer, or other employee of such employer, shall be liable for any injury for which compensation is recoverable under the workers compensation act nor shall an employer be liable to any third party for any injury or death of an employee which was caused under circumstances creating a legal liability against a third party and for which workers compensation is payable by such employer.

employer under K.S.A. § 44–503(a), plaintiffs' sole remedy is recovery under the Kansas Workers Compensation Act, and their survival and wrongful death actions against Western Resources are barred.

■ The Kansas Supreme Court has developed a two-pronged test to determine whether the work giving rise to a worker's injury was a part of the principal's trade or business under K.S.A. § 44–503(a), thereby making the principal a statutory employer. *See Bright v. Cargill, Inc.*, 251 Kan. 387, 393–94, 837 P.2d 348 (1992). Under this test, a principal is considered the statutory employer of the injured worker when either of the following questions is answered in the affirmative: (1) Was the work being performed by the injured employee necessarily inherent in and an integral part of the principal's trade or business? or (2) Was the work being performed by the injured employee such as would ordinarily have been done by the employees of the principal? *See id.* (citing *Hanna v. CRA, Inc.*, 196 Kan. 156, 159–60, 409 P.2d 786 (1966)). When applying this test, the Kansas Supreme Court liberally construes the relevant provisions of the Kansas Workers Compensation Act "for the purpose of bringing a worker under the Act whether or not desirable for the specific individual's circumstances." *See Bright*, 251 Kan. at 393, 837 P.2d 348.

■ Each case applying the statutory employer test, also known as the *Hanna* test, must be determined on its own particular facts and circumstances. *See Hanna*, 196 Kan. at 159, 409 P.2d 786. This fact-based inquiry is necessary because whether a worker was a statutory employee is purely a question of fact. In the instant case, the court concludes that the uncontroverted facts establish that Price was the statutory employee of Western Resources, and that defendant has met its summary judgment burden of demonstrating the absence a genuine issue of material fact regarding Price's status as a statutory employee.

The first prong of the *Hanna* test requires the court to determine whether the work being performed by Price was necessarily inherent and an integral part of Western Resources' trade or business. Plaintiffs do not contest that the repair and maintenance of switchgears and circuit breakers are integral aspects of Western Resources' business. Furthermore, plaintiffs concede that Price was called to the Lawrence Energy Center to examine and assist in the repair of the 501 main circuit breaker. The court concludes from the uncontroverted facts that Price was engaged in the repair of the 501 main station switchgear when the switchgear exploded on November 24, 1997. The court further concludes that this activity was an integral part of Western Resources' generation, provision, and sale of electricity. Accordingly, the first question asked by the *Hanna* test is answered in the affirmative. Although an affirmative answer to the first question is sufficient to establish that Western Resources was Price's statutory employer, the court will also address the second question.

The second question asked by the *Hanna* test is whether the work being performed by Price was ordinarily performed by employees of Western Resources. From the uncontroverted facts of this case, the answer to the question is also "yes." The tasks performed by Price on November 24, 1997, were of a kind commonly performed by members of Western Resources' Electrical Maintenance Department. Western Resources provided uncontroverted evidence that the Electrical Maintenance Department had conducted similar repair and maintenance work in the past without the assistance of Price, and that it would have attempted to repair the switchgear on November 24, 1997, even if Price had not been available. This conclusion is supported by the uncontroverted evidence that Price worked alongside Western Resources' electricians throughout the day in question, and was working next to two members of the Electrical Maintenance Department when the switchgear exploded. Finally, while Western Resources contracted with ABB Services

to perform so-called "specialized technical electrical services," plaintiffs presented no evidence suggesting that, at the time of the explosion, Price was performing an overhaul of the circuit breaker or any other specialized electrical service not ordinarily performed by employees of Western Resources.

Plaintiffs argue that, because Price was trained in the "fine art" of calibrating circuit breaker components, and because he was paid more than other Western Resources employees, the work performed by Price was not ordinarily performed by Western Resources employees. Plaintiffs, however, fail to provide factual support for their contentions. Plaintiffs presented no evidence that Price's training was superior to the training of the electricians employed by Western Resources. Furthermore, plaintiffs failed to provide evidence establishing Price's rate of pay on November 24, 1997.[6] Even if plaintiffs' argument was adequately supported, it would remain unpersuasive. Regardless of Price's talents or rate of pay, the *Hanna* test requires that court to focus its inquiry on the work actually performed by the injured worker. In this case, the uncontroverted evidence established that Price was assisting in the repair and maintenance of the switchgear and circuit breaker at time of the accident—services ordinarily performed by employees of Western Resources. Accordingly, the court concludes that, under the Kansas Workers Compensation Act, Western Resources is Price's statutory employer. Plaintiffs' survival and wrongful death actions are barred by the Act's exclusive remedy provision.

### B. Constitutionality of the Act

 Plaintiffs next argue that, if the exclusive remedy provision of the Kansas Workers Compensation Act bars their instant action, the Act is unconstitutional as it deprives them of their property interest in their survival and wrongful death action

without due process of law. In order to support their claim, plaintiffs must show that they were deprived of a property interest protected by the Fourteenth Amendment. *See Board of Regents v. Roth,* 408 U.S. 564, 579, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). An interest in property arises only when there is a legitimate claim of entitlement; a mere abstract need or unilateral expectation for a particular benefit is insufficient to create a property interest. *Id.* at 577, 92 S.Ct. 2701. Property interests are not created by the Constitution, but arise from independent sources such as state statutes, local ordinances, established rules, or mutually explicit understandings. *See Perry v. Sindermann,* 408 U.S. 593, 601–602, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *Richardson v. City of Albuquerque,* 857 F.2d 727, 731 (10th Cir.1988).

 The court concludes that plaintiffs have no protected property rights in their survival and wrongful death action. The passage of the Kansas Workers Compensation Act extinguished any property interests that parties such as plaintiffs may have had in a civil action outside the Kansas Workers Compensation Act. A state "may amend or terminate property interests that it has created, such as ... causes of action, without depriving the affected individuals of procedural due process." *Buford v. Holladay,* 791 F.Supp. 635, 643 (S.D.Miss.1992) (citing *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 433, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982)). When it passed the Kansas Workers Compensation Act, the Kansas legislature chose to eliminate civil causes of actions seeking to redress injuries for which workers compensation benefits are recoverable. Plaintiffs, therefore, never had a vested property interest in their survival and wrongful death action.

---

6. Plaintiffs attached a copy of a December 1, 1997 contract between ABB Services and Western Resources. While this contract establishes that Western Resources agreed to pay ABB Services either $110.00 or $120.00 per hour depending on the type of work performed, it did not become effective until after the date of the accident.

Assuming plaintiffs were deprived of a protected property interest, the court finds that plaintiffs received all the process they were due. When a state extinguishes, through legislation, various property interests, "the legislative determination provides all the process that is due." *Logan*, 455 U.S. at 433, 102 S.Ct. 1148. "[A state's] interest in fashioning its own rules of tort law is paramount to any discernible federal interest, except perhaps an interest in protecting the individual citizen from state action that is wholly arbitrary or irrational." *Id.* (quoting *Martinez v. California*, 444 U.S. 277, 282, 100 S.Ct. 553, 62 L.Ed.2d 481 (1980)).

IT IS, THEREFORE, BY THE COURT ORDERED that defendant Western Resources, Inc.'s motion for summary judgment (Doc. 17) is granted.

The clerk shall mail copies of this order to counsel of record.

**IT IS SO ORDERED.**