**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 14 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

ALICE F. PRICE, next friend of
minor, Alexandria F. Price,
individually and as personal
representative for the estate of Charles
Edward Price; and ALEXANDRIA F.
PRICE,

        Plaintiffs - Appellants,

    v.

WESTERN RESOURCES, INC.,

        Defendant - Appellee.

No. 99-3184

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. NO. CV-98-2276-GTV)**

Mark J. Bredemeier, Lee's Summit, Missouri (Daryl K. Bredemeier, Lee's
Summit, Missouri, and Dale E. Bennett, Westwood, Kansas, with him on the
brief), for Appellants.

John C. Nettels, Jr., Morrison & Hecker, L.L.P., Wichita, Kansas (Walter M.
Brown, Morrison & Hecker, L.L.P., Kansas City, Missouri, with him on the
brief), for Appellee.

Before **KELLY** , **ANDERSON** , and **HENRY** , Circuit Judges.

**ANDERSON** , Circuit Judge.

Appellants Alice F. Price and Alexandria F. Price brought this diversity wrongful death and survival action against Western Resources, Inc. ("Western") after their husband and father, Charles Edward Price, died from injuries he sustained while working on a switchgear at Western's Lawrence Energy Center ("LEC"). Following several months of discovery, the district court granted Western's motion for summary judgment, holding that Price was Western's statutory employee pursuant to Kan. Stat. Ann. § 44-503(a) and that, as a result, this action was barred by the exclusive remedy provision of Kan. Stat. Ann § 44-501(b). On appeal from that judgment, the Appellants contend that: (1) the district court erred in refusing to grant them more time to discover information in Western's exclusive control which, they argue, would have created triable issues of fact; (2) the district court erred in granting summary judgment because genuine issues of material fact exist as to Price's status as a statutory employee under Kan. Stat. Ann. § 44-503(a); and (3) Kan. Stat. Ann. § 44-501(b) unconstitutionally deprives Appellants of their property interest in their claims against Western without due process of law. We exercise jurisdiction pursuant to 28 U.S.C. § 1291, and affirm.

# BACKGROUND

Price was a highly skilled electrical engineer employed by ABB Services, a wholly-owned subsidiary of Asea Brown Boveri, Inc. ("ABB"). ABB provided various services to Western as an independent contractor.

Western is a Kansas corporation engaged in the production, purchase, transmission and sale of electricity. Western owns and operates the LEC, an electric generating facility in Lawrence, Kansas. At the LEC, Western uses a variety of equipment to convert raw electric power into a form that can be delivered over transmission lines to customers. One such piece of equipment is the switchgear involved in the accident at issue. Western directly employs electricians in its Electric Maintenance Department for the purpose of maintaining and repairing its electrical equipment, including switchgears and circuit breakers. Western also hires independent contractors, such as ABB, to supplement its own workforce when needed and to provide other specialized services which it does not normally perform in-house.

On or about November 23, 1997, Western attempted to start up the LEC's Unit No. 5 after a maintenance outage. Upon startup, the circuit breaker in the 501 main station switchgear tripped. The circuit breaker continued to trip through the night and into the morning hours of November 24, 1997. Western's

electricians worked on the switchgear and circuit breaker through the night, but were unable to fix them. On the morning of November 24, 1997, Terry Scarlett, a Western electrician, called Price at home and asked him to come to the LEC to work on the problem. After Price indicated that he would come to the LEC, Western's electricians stopped working on the switchgear and waited for him to arrive.

Price worked with Western's electricians through the day on November 24, 1997. By 4:00 p.m. they were able to determine that the circuit breaker was not the problem with the malfunctioning switchgear. At 4:40 p.m., while Price and two Western electricians, Ron Guy and Duane Tenpenny, were working near the switchgear, an electrical explosion occurred. Tenpenny was killed instantly[1] and Guy and Price were severely injured. Guy died from his injuries five days later and Price died from his injuries on December 1, 1997. After Price's death, Appellants obtained workers compensation benefits from his direct employer, ABB.

---

[1]The district court erroneously stated that Guy, rather than Tenpenny, was killed instantly.

# DISCUSSION

## A.  Discovery Issue

Rule 56(f) allows a court to stay or deny a summary judgment motion in order to permit further discovery if the nonmovant states by affidavit that it lacks facts necessary to oppose the motion.  Fed. R. Civ. P. 56(f).[2]

Appellants claim that Western has in its exclusive control information relevant to Price's status as a statutory employee on the day of his injury.  As a result, they contend, the district court should have denied or stayed Western's motion for summary judgment so that they could conduct "full discovery."  Appellants' Br. at 22-23.  Although they fail to cite Rule 56(f), we, like the district court, construe Appellants' argument as one requesting relief under that rule.

The general principle of Rule 56(f) is that "summary judgment [should] be refused where the nonmoving party has not had the opportunity to discover

---

[2]Rule 56(f) reads in full:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or make such other order as is just.

Fed. R. Civ. P. 56(f).

information that is essential to his opposition." Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 250 n. 5 (1986). The movant's exclusive control of such information is a factor weighing heavily in favor of relief under Rule 56(f). See Vivid Techs., Inc. v. American Sci. and Eng'g, Inc. , 997 F. Supp. 104, 107 (D. Mass. 1998), vacated in part on other grounds , 200 F.3d 795 (1st Cir. 1999).

However, Rule 56(f) does not operate automatically. Its protections must be invoked and can be applied only if a party satisfies certain requirements. We have summarized the requirements of Rule 56(f) as follows:

> A prerequisite to granting relief [pursuant to Rule 56(f)] . . . is an affidavit furnished by the nonmovant. Although the affidavit need not contain evidentiary facts, it must explain why facts precluding summary judgment cannot be presented. This includes identifying the probable facts not available and what steps have been taken to obtain these facts. In this circuit, the nonmovant also must explain how additional time will enable him to rebut movant's allegations of no genuine issue of fact.
>
> . . . [C]ounsel's unverified assertion in a memorandum opposing summary judgment does not comply with Rule 56(f) and results in a waiver.

Committee for the First Amendment v. Campbell , 962 F.2d 1517, 1522 (10th Cir. 1992) (citations omitted). After reviewing the foregoing authorities, the district court found that Appellants were not entitled to relief under Rule 56(f) because they had failed to meet its requirements. We review that decision under the abuse of discretion standard. Id.

- 6 -

Instead of filing the required affidavit, Appellants requested a continuance and further discovery in the body of their memorandum opposing summary judgment. Price v. Western Res., Inc., 50 F. Supp.2d 1057, 1059 (D. Kan. 1999). The district court found that the failure to file an affidavit constituted a waiver and refused to grant relief under Rule 56(f). Id. Appellants contend that the district court erred in so doing. However, our cases make it clear that "[w]here a party opposing summary judgment and seeking a continuance pending completion of discovery fails to take advantage of the shelter provided by Rule 56(f) by filing an affidavit, there is no abuse of discretion in granting summary judgment if it is otherwise appropriate." Pasternak v. Lear Petroleum Exploration, Inc., 790 F.2d 828, 832-33 (10th Cir. 1986).

In addition to their failure to file the required affidavit, Appellants have failed to satisfy the other requirements of Rule 56(f). Instead of explaining what facts they want to discover, why they have not yet discovered them, and how additional time would help them rebut Western's allegations, Appellants state only that Western is in exclusive control of relevant information. While the movant's exclusive control of desired information is a factor favoring relief under Rule 56(f), it is not sufficient on its own to justify that relief, especially where the other requirements of Rule 56(f) have not been met. The Vivid case cited by Appellants in support of their position also states:

Exclusive control does not, however, require automatic relief under Rule 56(f). "If all one had to do to obtain a grant of a Rule 56(f) motion were to allege possession by movant of certain information [and] other evidence[,] every summary judgment decision would have to be delayed while the non-movant goes fishing in the movant's files."

Vivid, 997 F. Supp. at 107 (quoting Keebler Co. v. Murray Bakery Prods., 866 F.2d 1386, 1389 (Fed. Cir. 1989)). In Weir v. Anaconda Co., 773 F.2d 1073, 1083 (10th Cir. 1985), a case involving similar claims, the court stated, "[e]ven if plaintiff had filed a Rule 56(f) affidavit stating that he could not counter [movant's] affidavits because the necessary evidence was peculiarly within [movant's] knowledge, this alone would be insufficient to defeat [movant's] summary judgment motion."

Appellants cite Weir for the proposition that full discovery is especially important in exclusive control cases. Appellants mischaracterize Weir. The actual quote referenced in Appellants' brief reads, " sufficient time for discovery is especially important when relevant facts are exclusively in the control of the opposing party." Weir, 773 F.2d at 1081 (emphasis added). Earlier in that same paragraph, the court stated that, "[t]here is no requirement in Rule 56, Fed. R. Civ. P. that summary judgment not be entered until discovery is complete." Id.

- 8 -

Western filed its motion to dismiss on August 13, 1998. [3] Appellants' App. at 4, Dkt. No. 17. Appellants successfully moved the district court for more time to respond to Western's motion on three different occasions. Appellants' App. at 6-7, Dkt. Nos. 30, 38 and 45. Appellants filed their response to Western's motion to dismiss on February 22, 1999, more than six months after the motion was filed. During that time, Western answered interrogatories, produced documents and produced three witnesses who were deposed on the statutory employer issue.

Because the foregoing facts and authorities provide an ample basis from which the district court could reasonably conclude that (1) Appellants waived their right to Rule 56(f) relief by failing to file the required affidavit and (2) sufficient discovery on the statutory employer issue had been conducted, we conclude that the district court did not abuse its discretion in denying Appellants' request for Rule 56(f) relief.

## B. Statutory Employee Issue

Kan. Stat. Ann. § 44-501(b) provides that, "no employer, or other employee of such employer, shall be liable for any injury for which compensation is recoverable under the workers compensation act." Thus, where a remedy can be

---

[3]Western's motion to dismiss was its first responsive pleading to Appellants' complaint.

had under the workers compensation act, § 44-501(b) makes the remedy exclusive by immunizing the employer from tort liability for the injury. Employees of independent contractors can fall within the coverage of § 44-501(b) if the requirements of § 44-503(a) are met. The latter statute provides:

> Where any person (in this section referred to as principal) undertakes to execute  any work which is a part of the principal's trade or business  or which the principal has contracted to perform and contracts with any other person (in this section referred to as the contractor) for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal shall be liable to pay any worker employed in the execution of the work any compensation under the workers compensation act which the principal would have been liable to pay if that worker had been immediately employed by the principal.

Kan. Stat. Ann. § 44-503(a) (emphasis added). If a worker injured on the job is found to be an employee of the principal under § 44-503(a), the principal may have to pay workers compensation benefits to the worker. However, the principal will also escape tort liability for the injury under § 44-501(b).

The Kansas Supreme Court has developed two tests to be used in determining whether or not a worker is a statutory employee under § 44-503(a):

> (1) is the work being performed by the independent contractor and the injured employee necessarily inherent in and an integral part of the principal's trade or business? (2) is the work being performed by the independent contractor and the injured employee such as would ordinarily have been done by the employee of the principal?
>
> If either of the foregoing questions is answered in the affirmative the work being done is part of the principal's "trade or

business," and the injured employee's sole remedy against the principal is under the Workmen's Compensation Act.

Hanna v. CRA, Inc., 409 P.2d 786, 789 (Kan. 1966) (emphasis added). [4] When applying the Hanna tests, the general rule is that the statute must be "liberally construed for the purpose of bringing a worker under the Act whether or not desirable for the specific worker's circumstances." Bright v. Cargill, Inc., 837 P.2d 348, 355 (Kan. 1992).

Because of the exclusive remedy provision of § 44-501(b), this case turns on whether or not Price was a statutory employee under § 44-503(a) on the date of the accident. If so, Appellants' action will be barred by § 44-501(b). Appellants argue that the district court's finding that Price was a statutory employee under § 44-503(a) and its resultant grant of Western's motion for summary judgment were in error because evidence in the record establishes genuine issues of material fact as to whether Price was Western's statutory employee on the day of the explosion. We review a grant of summary judgment *de novo*, applying the same legal standard used by the district court. Simms v. Oklahoma *ex rel.* Dep't

---

[4]Appellants argue that Western must show, "[f]irst, the work performed on November 24, 1997 by ABB Service's Chuck Price must necessarily be inherent in and an integral part of Western Resources' business. Second, the work performed on November 24, 1997 by ABB Service's Chuck Price must ordinarily be done by Western's employees." Appellants' Br. at 18. Appellants misstate the law. Western need only satisfy one, not both, of the Hanna tests.

of Mental Health & Substance Abuse Servs. , 165 F.3d 1321, 1326 (10th Cir.), cert. denied , 120 S. Ct. 53 (1999).

### 1. The First Hanna Test

In 1992 the Kansas Supreme Court revisited the first Hanna test at length and clarified its requirements.

> The first test of Hanna , whether the work is inherent in and an integral part of the principal's trade or business, asks what other similar businesses do. Applied to the case at bar, would a similar grain elevator do the work at issue through employees or contract the work to millwrights?

Bright , 837 P.2d at 359. Prior to this clarification, courts applying § 44-503(a) looked to the thing being worked on and its necessity to the business of the principal. See, e.g., Lessley v. Kansas Power & Light Co. , 231 P.2d 239, 247 (Kan. 1951) (finding that worker employed by contractor who was constructing a new building for utility company was performing work that was part of the utility's trade or business because building was essential to the utility's business). After Bright , however, it is clear that the inquiry is not whether the building, machine, equipment, etc. is necessary to the business, but rather whether similar businesses use their own employees to perform the kind work that was being performed by the injured worker.

Both in their memorandum opposing summary judgment and in their brief on appeal, Appellants offer the following arguments and evidence with regard to the first Hanna test: (1) Western does not manufacture circuit breakers, switchgears or their various components; (2) Western hired ABB to overhaul its circuit breakers at ABB's facilities; and (3) when the circuit breaker in Unit No. 5 continued to trip, Western employees called Price to help. Because Western does not dispute any of the foregoing statements, we take them to be true.

For its part, Western has submitted the affidavit of Thomas Denning. Denning states that other specifically named utilities similar to Western "designate specific departments, such as the Electrical Maintenance Department (of which Mr. Guy and Mr. Tenpenny were members) to perform the type of work that was performed by Mr. Tenpenny, Mr. Guy and Mr. Price on the day of the accident." Denning Aff. ¶ 5, Appellants' App. at 51. Appellants do not dispute this statement and have offered no contrary evidence.

Appellants' assertions raise no issues of material fact. The fact that Western does not manufacture circuit breakers or switchgears and does not overhaul circuit breakers in-house is irrelevant under the first Hanna test for two reasons. First, Price was not manufacturing or overhauling anything on the day he was injured. Rather, he was analyzing the circuit breaker and switchgear and helping with repairs. Second, this evidence tells us nothing about whether similar

companies use their own employees to examine and repair circuit breakers and switchgears. Similarly, the fact that Western called Price to help with the malfunctioning circuit breaker and switchgear has nothing to do with what other companies do when such things malfunction. None of the evidence presented by Appellants establishes that companies similar to Western do not use their own employees to do the kind of work Price was doing when he was injured. The only evidence in the record that is relevant to the first <u>Hanna</u> test is the affidavit of Mr. Denning, which is uncontroverted. [5] As a result, the only conclusion that can be drawn from the record is that companies similar to Western employ electricians to do the same kind of work that Tenpenny, Guy and Price were doing on the day of the accident. Accordingly, we conclude that the first <u>Hanna</u> test has been met.

---

[5]Appellants seem to have underestimated the importance of this issue. Despite the fact that Western filed a supplemental memorandum in support of its motion to dismiss, accompanied by Mr. Denning's affidavit stating that similar companies use their employees to do the type of work Price was doing when he was injured, Appellants' counsel failed to question Mr. Denning about that claim at his subsequent deposition. In addition, Appellants' brief does not address the issue, but merely states the three points discussed above, followed by a restatement of the second, rather than the first, <u>Hanna</u> test. Lastly, Appellants offer no contrary evidence or assertions.

**2. The Second _Hanna_ Test**

Because both _Hanna_ tests are intended to prove the same fact, namely that the work being done was "part of the principal's trade or business," we will examine the second _Hanna_ test even though the first _Hanna_ test has been satisfied. The second _Hanna_ test is met where it is shown that the employees of the principal ordinarily do the type of work that was being done by the injured independent contractor. _Bright_, 837 P.2d at 356, 359. The first test looks to industry practice; the second test looks at the individual principal's practice.

Appellants assert the following with regard to the second _Hanna_ test: (1) Price was a highly skilled electrician and performed specialized electrical services for Western; (2) Western paid more for Price's services than it paid its own electricians; (3) after Western electricians had been unable to completely fix the problem with the switchgear and circuit breaker, Terry Scarlett, a Western electrician, called Price at home and asked him to come help with the problem; (4) Western electricians ceased working on the switchgear until Price arrived; and (5) Price's company had recently overhauled the circuit breaker that was tripping in the 501 main station switchgear.

Western responds that even if the foregoing assertions are all true, they do not raise genuine issues of material fact regarding Western's claim that its

- 15 -

employees routinely do the kind of work Price was doing at the time of the accident.

The evidence in the record indicates that Western employees regularly do the type of work Price was doing on November 24, 1997. Specifically, the record shows that Price brought no special tools to the LEC on November 24, 1997, Denning Dep. at 42, Appellants' App. at 302, that Western electricians routinely engaged in the kind of work Price was doing on November 24, 1997, namely the troubleshooting, maintenance and repair of circuit breakers and switchgears, Phelps Aff. ¶¶ 6-7, id. at 33; Denning Aff. ¶ 4, id. at 50-51, 52-73; Phelps Dep. at 56-58, id. at 281-82; Denning Dep. at 24, 55-56, 61-63, id. at 297, 305, 307; Scarlett Dep. at 88, 104, 109, id. at 337, 341, 343, and that Western electricians could perform any task Price could perform, including the overhaul of circuit breakers. Phelps Dep. at 56-58, id. at 281-82; Denning Dep. at 55-56, 61, id. at 305, 307; Scarlett Dep. at 88, id. at 337.

In addition, the record shows, and the parties do not dispute, that Price worked with Western electricians Ron Guy, Duane Tenpenny and Terry Scarlett on the day of the accident. Tenpenny was with Price the entire time he was working at the LEC that day, and Guy and Scarlett also worked with them at times during the day. Scarlett Dep. at 23-24, id. at 321; Denning Aff. ¶ 3, id. at 50.

Tenpenny and Guy were working with Price when the explosion occurred. Denning Aff. ¶ 3, id. at 50.

It is hard for us to believe that the three Western electricians were not doing the same type of work Price was doing that day. There is nothing in the record from which we could infer that the Western electricians were merely watching Price work, doing nothing more than handing him tools or simply following his orders. Terry Scarlett indicated in his deposition that he called Price to come in to see if he and Tenpenny could figure out what was wrong with the switchgear. Scarlett. Dep. at 88, id. at 337. This implies that Tenpenny would be working with, not watching Price. In addition, Western's electricians had worked on the problem through the previous night, Denning Dep. at 33-35, id. at 300, and would have continued working on the switchgear even if Price had not been available. Scarlett Dep. at 109, id. at 343. In other words, the record indicates that Western actually did use its own employees, both prior and subsequent to Price's arrival, to do the work he was called to do, namely to troubleshoot and repair the switchgear and circuit breaker. This fact supports Western's contention that its electricians regularly do such work.

Western does not dispute that Price was a highly skilled electrician or that he performed specialized electrical services on November 24, 1997. That does not mean, however, that Western's electricians did not routinely perform such

services. Most of the tasks that would be required of electricians at the LEC could likely be so classified. Even if we assume that Price was more highly skilled than Western's electricians, we cannot automatically conclude that Western's electricians did not normally do the kind of work Price was doing on the day of the accident. The question is not whether Price was better than Western's electricians at analyzing and repairing switchgears and circuit breakers, but whether Western regularly used its own employees to do that kind of work.

There is credible evidence in the record that Western paid more for Price's services than it did for the services of its own electricians. From that fact we can at least infer that Western, if acting efficiently and rationally, would only call upon him in extraordinary situations if its own employees were capable of doing the same work. The state of affairs on November 24, 1997, appears to be such a situation. Unit No. 5 had been down for two weeks for maintenance and was needed back online to help produce and distribute electricity as soon as possible. Western could have rationally decided that it was worthwhile to pay Price's higher fee if he could help quickly resolve the problem or if it was shorthanded.

Appellants also point out that Price was called after Western's electricians failed to completely solve the problem and that Western's electricians ceased working on the switchgear and circuit breaker until Price arrived. These assertions provide only indirect support for Appellants' position while completely

failing to directly challenge Western's evidence that its electricians routinely engage in the type of work Price was doing on November 24, 1997.

Finally, Appellants imply that because ABB overhauled the circuit breaker involved in the accident, Price was doing work that could not be done by Western employees. Price, along with Western's electricians, analyzed the circuit breaker on November 24, 1997. Because Price was not overhauling the circuit breaker that day, the fact that Western's employees do not regularly overhaul circuit breakers is immaterial.

Instead of producing affidavits or deposition testimony to the effect that Western did not routinely use its employees to troubleshoot and repair switchgears and circuit breakers, Appellants focus on Price's qualifications and other circumstantial evidence. Appellants have proven that Price was good at his job, was expensive, knew a lot about circuit breakers and was considered by Western to be someone who could help it resolve problems with switchgears and circuit breakers. They have not, however, provided any direct evidence that Western electricians do not routinely analyze, maintain and repair switchgears and circuit breakers. In other words, Appellants have raised no genuine issues of material fact on this issue. Western, on the other hand, has provided plentiful and uncontroverted evidence showing that Western employees routinely perform that

kind of work. Accordingly, we conclude that Western has met the second Hanna test.

Because our review of the record has led us to the same conclusion reached by the district court, we hold that the district court did not err in finding that Price was a statutory employee under § 44-503(a) or in granting Western's motion for summary judgment.

## C.    Constitutionality of Kan. Stat. Ann. § 44-501(b)

Finally, Appellants argue that if Kan. Stat. Ann. § 44-501(b) immunizes Western from their wrongful death and survival action, it unconstitutionally deprives them of a property interest without due process of law.

The Kansas legislature has broad powers to adjust relations between employers and employees under workers compensation principles. See Building and Constr. Dept. v. Rockwell Int'l Corp., 7 F.3d 1487, 1494 (10th Cir. 1993). "It is . . . well established that legislative Acts adjusting the burdens and benefits of economic life [carry] . . . a presumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way." Usery v. Turner Elkhorn Mining Co., 428 U.S. 1, 15 (1976). "[A state's] interest in fashioning its own rules of tort law is paramount to any discernible federal interest, except perhaps

- 20 -

an interest in protecting the individual citizen from state action that is wholly arbitrary or irrational." Martinez v. California, 444 U.S. 277, 282 (1981).

When it passed § 44-501(b) and § 44-503(a), the Kansas legislature chose to impose broad workers compensation liability on employers when they hired any worker, whether directly or through an independent contractor, to perform work within their trade or business. As Appellants point out, the idea behind § 44-503(a) was to prevent employers from escaping workers compensation liability by hiring independent contractors. Because recovery in tort is uncertain, especially where the worker is partially or completely at fault, the Kansas legislature chose to impose statutory liability on employers anytime a worker was injured while working on something within the employer's trade or business. This clearly increased the cost of doing business for employers as they were required to cover the work-related injuries of every direct or statutory employee, regardless of fault.

While the legislature sought to protect workers by imposing blanket liability for injuries they sustained on the job, it also sought to be fair to employers. As a result, § 44-501(b) was enacted. The purpose of § 44-501(b) is to provide an exclusive remedy. In other words, workers in Kansas enjoy broad workers compensation protection. However, that is their sole remedy. If an injured worker or his heirs can recover from anyone under the workers compensation act, they may not sue any employer for a second, separate recovery

for the injury even if that employer is not the entity from which they recovered under the act. Whether one agrees or disagrees with the compromise struck by the Kansas legislature, it cannot be said that § 44-501(b) is an arbitrary or irrational legislative action. On the contrary, it appears to be the result of a well thought out compromise between the interests of employers and workers. Accordingly, we conclude that § 44-501(b) is presumptively constitutional and we move on to examine the alleged deprivation.

A state "may amend or terminate property interests that it has created, such as . . . causes of action, without depriving the affected individuals of procedural due process." Buford v. Holladay, 791 F. Supp. 635, 643 (S.D. Miss. 1992) (citing Logan v. Zimmerman Brush Co., 455 U.S. 422, 433 (1982)), aff'd, 11 F.3d 499 (5th Cir. 1993). The district court noted:

> When it passed the Kansas Workers Compensation Act, the Kansas legislature chose to eliminate civil causes of action seeking to redress injuries for which workers compensation benefits are recoverable. Plaintiffs, therefore, never had a vested property interest in their survival and wrongful death action.

Price, 50 F. Supp.2d at 1063. We agree. Even assuming that Appellants were deprived of a protected property interest, they have received all the process that is due. As the district court stated, "[w]hen a state extinguishes, through legislation, various property interests, 'the legislative determination provides all the process that is due.'" Id. (quoting Logan, 455 U.S. at 433).

## CONCLUSION

Based on the foregoing, we conclude that (1) the district court did not abuse its discretion in failing to grant relief pursuant to Fed. R. Civ. P. 56(f), (2) the district court did not err in finding that Price was a statutory employee under § 44-503(a) and in granting Western's motion for summary judgment, and (3) Kan. Stat. Ann. § 44-501(b) does not unconstitutionally deprive Appellants of a property interest without due process of law. We therefore AFFIRM the district court in all respects.