**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 12 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

EVA LYONS,

        Plaintiff-Appellant,

v.

RED ROOF INNS, INC.,

        Defendant-Appellee.

No. 04-1360
(D.C. No. 03-D-623 (PAC))
(D. Colo.)

---

**ORDER AND JUDGMENT** *

---

Before **LUCERO** , **McKAY** , and **ANDERSON** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Plaintiff-appellant Eva Lyons, proceeding pro se, appeals the district court's grant of summary judgment in favor of her former employer,

---

*     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

defendant-appellee Red Roof Inns, Inc. (RRI), on her claims that RRI discriminated and retaliated against her in violation of Title VII of the Civil Rights Act of 1964. *See* 42 U.S.C. §§ 2000e-2(a)(1) and 2000e-3(a). Exercising jurisdiction under 28 U.S.C. § 1291, we affirm in part and reverse in part.

## I.

Lyons is a white female. Lyons was employed by RRI from March 1997 to December 2001 at RRI's hotel #239 in Colorado Springs, Colorado. Lyons started in the housekeeping department, but she subsequently became a guest service representative with front desk responsibilities. RRI terminated Lyons' employment in December 2001 because she had allegedly failed to perform the duties of her job. These failures included: (1) failing to perform "room racks" on December 11, 2001 after she had received specific instructions on October 16, October 21, and December 10, 2001, that room racks were a required part of her job;[1] (2) falsifying a record pertaining to the room racks that she failed to perform; and (3) taking home the key for the hotel safe. *See* R., Doc. 16., Ex. D at 3-4, ¶¶ 13-16; Ex. H.

_____

[1] "Room racks" are hotel room inspections that RRI guest service representatives are required to perform in order to "verify which rooms are occupied, and which are available for rent." R., Doc. 16, Ex. D at 3, ¶ 13.

In her complaint, Lyons claimed that RRI terminated her "with intent to discriminate because of [her] race/color (caucasian/white)" and "because of [her] sex (female)." *Id.*, Doc. 3 at 3, 4. Lyons claimed that her termination amounted to discriminatory disparate treatment because she was treated differently than a similarly situated female African-American employee and a similarly situated male employee. *Id.* In addition, Lyons claimed that RRI "retaliated against [her] for helping a former co-worker, Harley Lyons, [who is now her husband], with his own case of discrimination against Red Roof Inns." [2] *Id.* at 5.

The magistrate judge concluded that Lyons had failed to put forth sufficient evidence to establish a prima facie case of either gender or reverse racial discrimination. The magistrate judge also concluded that Lyons had failed to put forth sufficient evidence to establish a prima facie case of retaliation. The magistrate judge therefore recommended to the district judge that RRI's motion for summary judgment be granted. The district judge adopted the magistrate judge's recommendation and entered judgment in favor of RRI.

---

[2]     In an unpublished order and judgment filed this date in appeal No. 04-1275, this panel affirmed the district court's grant of summary judgment in favor of RRI on Mr. Lyons' reverse discrimination claims under Title VII.

## II.

### A. Summary Judgment Standards.

"We review the grant of summary judgment de novo applying the same standard as the district court embodied in Rule 56(c)." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). Under Rule 56(c), summary judgment is proper if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "In applying this standard, we view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant." *Adler*, 144 F.3d at 670. We also construe Lyons' pro se pleadings liberally. *See Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 674 (10th Cir. 2002). Nonetheless, Lyons must set forth sufficient facts to support her claims, *id.*, and "[c]onclusory allegations that are unsubstantiated do not create an issue of fact and are insufficient to oppose summary judgment," *Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1136 (10th Cir. 2003) (quotation omitted); *see also* Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made and supported as provided in this rule, . . . the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial.").

**B. Gender Discrimination Claim.**

"When a plaintiff relies on circumstantial evidence to prove employment discrimination, we apply the three-step burden-shifting framework set forth in *McDonnell Douglas* and its progeny." *Plotke v. White*, __ F.3d __, 2005 WL 984363, at *5 (10th Cir. April 28, 2005) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800-07 (1973)).

> *McDonnell Douglas* first requires the aggrieved employee to establish a prima facie case of prohibited employment action. The burden of establishing a prima facie case by a preponderance of the evidence is not onerous. Furthermore, this burden is one of production, not persuasion; it can involve no credibility assessment. If the employee makes a prima facie showing, the burden shifts to the defendant employer to state a legitimate, nondiscriminatory reason for its adverse employment action. If the employer meets this burden, then summary judgment is warranted unless the employee can show there is a genuine issue of material fact as to whether the proffered reasons are pretextual.

*Id.* (quotations and citations omitted).

One way for Lyons to establish a prima facie case of discriminatory discharge is by showing that: (1) she is a member of a protected class; (2) she was qualified to perform her job; (3) despite her qualifications, she was discharged; and (4) the job was not eliminated after her discharge. *See Perry v. Woodward*, 199 F.3d 1126, 1135 (10th Cir. 1999); *Plotke*, 2005 WL 984363, at *6. We agree with the magistrate judge that Lyons put forth sufficient evidence to support the first three elements of her prima facie case of gender discrimination. *See* R., Doc.

-5-

29 at 5. We also conclude that Lyons has satisfied the fourth element of her prima facie case, as there is no evidence in the record indicating that her position at RRI was eliminated following her termination. [3] We also note that the magistrate judge utilized the wrong test when she set forth the fourth element of the prima facie case. [4]

This error does not affect the validity of the district court's entry of summary judgment "if there is an alternative ground for affirming the result reached." *Ashby v. McKenna*, 331 F.3d 1148, 1151 (10th Cir. 2003). "We are

---

[3] In her opening brief, Lyons alleges that another RRI employee "took over [her] position permanently after [she] was terminated," Aplt. Opening Br. at 7, and RRI has not disputed this allegation, *see* Aplee. Br. at 4, n.1, 6, 9-10. In accordance with *Perry*, Lyons has therefore satisfied the fourth element of her prima facie case. *See Perry*, 199 F.3d at 1140 (holding that an employee made out the fourth element of her prima facie case of racial discrimination where "it [was] undisputed that after her termination, a replacement was hired to fill [her] position").

[4] The magistrate judge stated that Lyons was required to show that "she was treated less favorably than others not in the protected class" to satisfy the fourth element of her prima facie case. R., Doc. 29 at 5 (citing *Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1315-16 (10th Cir. 1999)). This is an incorrect statement of the law, however, because this court subsequently held in *Perry* that a Title VII plaintiff may satisfy the fourth element of the prima facie case by demonstrating that "the job from which she was terminated was not eliminated." *Perry*, 199 F.3d at 1140. Although *Perry* did not expressly overrule *Bullington*, we have recognized that *Perry* is "[t]he most definitive Tenth Circuit case on the formulation of the fourth prong of a plaintiff's prima facie case pursuant to *McDonnell Douglas*," and that "comparison to a person outside of the protected class in the fourth prong of the prima facie case is unnecessary to create an inference of discriminatory discharge." *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1228, 1229 (10th Cir. 2000).

free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court." *United States v. Sandoval*, 29 F.3d 537, 542 n.6 (10th Cir. 1994) (quotation omitted). For purposes of this appeal, there is only one potential alternative ground for affirming the result reached by the district court, and that is that Lyons failed to put forth sufficient evidence to establish that RRI's proffered reasons for terminating her were pretextual. Based on the record currently before this court, however, there are genuine issues of material fact which preclude us from affirming the district court's grant of summary judgment on that alternative ground.

To put forth sufficient evidence of pretext to survive summary judgment, a plaintiff is not required to show that the employer was motivated by a discriminatory animus. *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995). Instead, at the summary judgment stage, once the employer comes forward with a facially nondiscriminatory reason for an adverse employment decision, the plaintiff's burden is only to demonstrate that a genuine issue of material fact exists as to whether the proffered reasons were unworthy of belief. *Id.*; *see also Plotke*, 2005 WL 984363, at *8 ("A plaintiff can show pretext by revealing such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable

factfinder could rationally find them unworthy of credence.") (quotation omitted).

As a result, if a plaintiff "presents evidence that the defendant's proffered reason

for the employment decision was pretextual – i.e. unworthy of belief, the plaintiff

can withstand a summary judgment motion and is entitled to go to trial." [5] *Randle*,

69 F.3d at 451.

Given these standards, Lyons can survive summary judgment on the issue

of pretext by putting forth evidence showing "that [RRI's] stated reason for the

adverse employment action was false." *Kendrick v. Penske Transp. Servs., Inc.*,

220 F.3d 1220, 1230 (10th Cir. 2000). Having carefully reviewed the summary

judgment record, we conclude that Lyons has made a such a showing, and that the

district court therefore erred in granting summary judgment in favor of RRI on

Lyons' gender discrimination claim.

To support its claim that it had a legitimate, nondiscriminatory reason for

terminating Lyons, RRI submitted an affidavit from Lyons' supervisor, Shane

DeVilbiss, a white male. In his affidavit, DeVilbiss stated the following:

> The problem with [Lyons'] refusal to do the room rack
> escalated to a point where [on December 11, 2001] I tested to see if,

---

[5] If a case proceeds to trial, however, "the presumption of discrimination created by the prima facie showing simply drops out of the picture." *Randle*, 69 F.3d at 453 (quotation omitted). "At trial, the plaintiff must prove illegal discrimination either (1) *inferentially* by showing that the proffered reason is a pretext *for discrimination*; and/or (2) *directly* by offering direct evidence of discrimination." *Id.* (footnote omitted).

as I suspected, she was not performing this function of her job. To do this, I selected a few rooms around the hotel which had been cleaned. I disturbed the room[s] by pulling down the covers and moving furniture. If [Lyons] had been doing the room rack as she was required to do, her room rack report would have noted these rooms "dirty." When her report showed the rooms as "clean" I knew that [Lyons] had falsified her report and, as I suspected, failed to perform all her assigned duties and responsibilities. I also retained a copy of the front desk security video to verify that, during her shift, [Lyons] did not leave the front desk for periods of time sufficient to perform this important function. When I confronted [Lyons] about this final violation of policy, she admitted the falsification.

. . . I also learned that, contrary to strict RRI security policies, [Lyons] had been taking the safe key home with her at night. [Lyons] refused to return the key for some period of time but eventually it was returned.

R., Doc. 16, Ex. D at 4, ¶¶ 15-16.

In the affidavit that she submitted in opposition to RRI's motion for summary judgment, Lyons directly disputed DeVilbiss's allegations that she failed to perform a proper room rack during her shift on December 11, 2001, and that she prepared a falsified room rack report. She also alleged that DeVilbiss had specifically instructed her to take the safe key home with her.

I never ever refused to perform any duties and responsibilities of my job including room racks. And I deny ever falsifying my room racks. Shane DeVilbiss alleges I was terminated for not completing a room rack on December 11, 2001. His allegation is false. The room rack he fired me for was Darla K. Thompson's room rack. On December 11, 2001 I arrived to work early and did my room rack before I clocked in. My room rack was thorough and complete. Shane phoned my home on December 12, 2001 and informed me I was fired for not completing my room rack and he accused me of copying Doug Jose's room rack which is not possible because Doug's

-9-

room rack was not complete. He informed me that three rooms were dirtied before I arrived to work to see if I would mark them dirty on the room rack report. I asked Shane which three rooms they were and he did not tell me. . . .

. . . .

. . . At no time did I ever refuse to return the safe key to Shane DeVilbiss and I did not take the safe key home against strict Red Roof Inn security policies. I took the keys home because I was ordered to do so by Shane DeVilbiss. I was Shane's relief manager and we were the only persons with keys to access the hotel safe. Shane instructed me to take the keys home daily to prevent anyone else from having access to the safe. Shane phoned my home on December 13, 2001 the day after I was fired, and asked me to return the keys and I told him I would when I picked up my final pay check. On December 14, 2001 Shane phoned my home again and threatened to have money taken out of my check to have the safe re-keyed if I did not return the keys promptly. I returned the keys within minutes of his threat.

*Id.*, Doc. 26, Ex. 1 at 3, ¶¶ 8, 12.

Based on the allegations in her affidavit, we conclude that Lyons has sufficiently disputed DeVilbiss's allegations to survive summary judgment on the issue of pretext. Thus, the district court erred in granting summary judgment in favor of RRI on Lyons' gender discrimination claim.

**C. Reverse Racial Discrimination Claim.**

Lyons' claim that she was subjected to disparate treatment because she is white is subject to a reverse discrimination analysis. As a result, in evaluating Lyons' prima facie showing under the *McDonnell Douglas* paradigm, the magistrate judge was required to apply the standards that this court adopted in

*Notari v. Denver Water Dep't*, 971 F.2d 585 (10th Cir. 1992). Under *Notari*, for a reverse discrimination claimant to establish a prima facie case of discrimination, the claimant must "establish background circumstances that support an inference that the defendant is one of those unusual employers who discriminates against the majority." *Id.* 589. "Alternatively, a reverse discrimination plaintiff may satisfy the first prong of *McDonnell Douglas* by presenting 'indirect evidence sufficient to support a reasonable probability, that but for the plaintiff's status the challenged employment decision would have favored the plaintiff.'" *Stover v. Martinez*, 382 F.3d 1064, 1076 (10th Cir. 2004) (quoting *Notari*, 971 F.2d at 590).

We agree with the magistrate judge that Lyons failed to put forth sufficient evidence to establish a prima facie case of reverse racial discrimination, as Lyons "has produced insufficient evidence from which a jury could find that Red Roof engaged in a pattern of terminating white employees because of an anti-white bias." R., Doc. 29 at 19. As a result, we agree with the magistrate judge that Lyons "has failed to point to evidence to demonstrate that Red Roof is one of those unusual employers who discriminates against the majority." *Id.*

We also agree with the magistrate judge that Lyons has not produced any "indirect evidence sufficient to support a reasonable probability, that, but for her

-11-

status as a white person, she would not have been disciplined or terminated." *Id.* at 17. In particular, we agree with the following analysis of the magistrate judge:

> It is clear that plaintiff believes she was being singled out for unfair treatment. However, there is a difference between unfair treatment and illegal treatment. Plaintiff fails to provide content sufficient evidence of any pattern that Red Roof treated similarly situated African American or Hispanic employees more favorably than white employees, including Lyons. Rather, the evidence allows only the inference that plaintiff believed that she was being picked on and that she believed she was unfairly disciplined and then terminated because she believed that [her supervisor] was biased against white women.

*Id.* at 18. Accordingly, we conclude that the district court did not err in granting summary judgment in favor of RRI on Lyons' reverse racial discrimination claim.

**D. Document Requests Related to Disparate Treatment Claims.**

In her opening brief, Lyons claims that the district court erred by "denying her pertinent evidence to help her further prove pretext and [that] discriminatory adverse employment actions did occur." Aplt. Opening Br. at 4. Specifically, Lyons argues that the district court erred by failing "to order Red Roof Inns to supply her with all Room Rack Reports of all employees in the years 2001 and 2002." *Id.* Having carefully reviewed the record (in particular, the motion to compel that Lyons filed in the district court, *see* R., Doc. 19), we conclude that the district court did not abuse its discretion in refusing to order RRI to produce the requested room rack reports in the context of RRI's motion for summary

-12-

judgment.[6] *See Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1300 (10th Cir. 1999) ("We review discovery rulings for an abuse of discretion.").

First, Lyons failed to move for a discovery continuance under Rule 56(f) during the proceedings before the magistrate judge. Consequently, Lyons waived any issues under Rule 56(f). *See Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived."). Second, even if the arguments set forth in Lyons' motion to compel had been submitted to the magistrate judge as part of a proper Rule 56(f) motion and affidavit, it would have been an abuse of discretion for the magistrate judge to grant a discovery continuance under Rule 56(f). *See Jensen v. Redevelopment Agency of Sandy City*, 998 F.2d 1550, 1553 (10th Cir. 1993) ("We review a district court's denial of a Rule 56(f) motion for an abuse of discretion.").

To be entitled to a discovery continuance under Rule 56(f), a party must show precisely how additional discovery will lead to a genuine issue of material fact. *See Jensen*, 998 F.2d at 1554; *Price ex rel. Price v. W. Res., Inc.*, 232 F.3d 779, 783 (10th Cir. 2000). Here, Lyons claims that the room rack reports for 2001 are "relevant and needed . . . to name all other employees who committed

_____

[6] Because they are relevant to the discovery issues raised by Lyons in this appeal, we have supplemented the record before this court with the following district court documents: Docs. 19, 20, 21, 28, 30.

-13-

the same or similar offense as Eva Lyons in the year 2001." R., Doc. 19 at 1-2.

We disagree. As the exhibits attached to Lyons' summary judgment response brief demonstrate, the room rack reports do not contain enough information to make that determination. *Id.*, Doc. 26, Exs. 19, 20, 21. As a result, even if Lyons had obtained the room rack reports for 2001, the reports would have been insufficient for purposes of defeating RRI's motion for summary judgment.

Lyons' claim that she needed the room rack reports for 2002 to oppose RRI's motion for summary judgment is also without merit. As set forth above, Lyons argues that "[d]ocuments of room rack reports in the year 2002 [are] needed to prove that after Red Roof Inns employer set up and terminated Eva Lyons for not completing a room rack report, the employer no longer expected *employees* to complete room rack reports." *Id.*, Doc. 19 at 2 (emphasis added). However, to the extent that the alleged elimination of the room-rack requirement was applied across the board to all RRI employees as Lyons alleges, then it has no relevance to her claim that RRI treated its white female employees less favorably than other employees.

Finally, we note that the discussion set forth herein concerning the above-referenced discovery issues is limited to the context of RRI's motion for summary judgment. Consequently, the district court is free to address any additional discovery issues that may arise in connection with the remand of Lyons' gender

discrimination claim. That said, we express no opinion as to whether any additional discovery would be appropriate on remand, and we leave the matter of discovery to the discretion of the district court.

**E. Retaliation Claim.**

Title VII forbids retaliation against an employee because she "has opposed any practice made an unlawful employment practice by [Title VII], or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). In cases such as this one, "[w]here there is no direct evidence of retaliation, we analyze a retaliation claim under the *McDonnell Douglas* burden-shifting framework." *Stover*, 382 F.3d at 1070. Under the *McDonnell Douglas* framework, an employee must first establish a prima facie case of retaliation. *Id.* "To state a prima facie case of retaliation, [Lyons] must demonstrate that: (1) she engaged in protected opposition to discrimination; (2) [RRI] took an adverse employment action against her; and (3) there exists a causal connection between the protected activity and the adverse action." *Id.* at 1071.

Lyons claims that she has put forth sufficient evidence to establish a prima facie case of retaliation because: (1) she was listed as a witness on Harley Lyons' Colorado Civil Rights Division intake form, *see* R., Doc. 26, Ex. 16 at 2; (2) "Red Roof Inn and Shane DeVilbiss . . . had access to Harley Lyons['] CCRD intake

form" and were "100% aware that [she] gave assistance to Harley Lyons in support of his charge of discrimination," *id.*, Doc. 26 at 8; and (3) "the adverse actions [taken] against her [by RRI] were related to her relationship with Harley Lyons and her involvement with his case of discrimination against Red Roof Inn," *id.*

As noted by the magistrate judge, "[t]estifying for an employee who has filed a charge or a lawsuit claiming a violation of Title VII *is* a protected activity under Title VII, but an employer cannot engage in unlawful retaliation if it does not *know* that the employee has opposed or is opposing a violation of Title VII." *Id.*, Doc. 29 at 22 (citing *Petersen v. Utah Dep't of Corr.*, 301 F.3d 1182, 1188 (10th Cir. 2002)). According to the magistrate judge, Lyons "[f]ail[ed] to meet the employer knowledge first element of a *prima facie* case of retaliation," because "[p]laintiff . . . fail[ed] to provide any evidence that Red Roof *knew* that she was a listed witness for her husband in his discrimination case at any time between the time he filed his charge, or his lawsuit in May of 2001, and the date plaintiff was fired in December of 2001." *Id.* at 23.

The magistrate judge is correct that "an employer cannot engage in unlawful retaliation if it does not know that the employee has opposed or is opposing a violation of Title VII." *Petersen*, 301 F.3d at 1188. We also agree with the magistrate judge that there is no specific factual evidence in the record

-16-

showing that Lyons' supervisor knew at the time he terminated her that she was listed as a witness in Harley Lyons' discrimination case or was otherwise assisting him with his discrimination case. [7] Instead, the record indicates only that there are disputed factual issues concerning when Lyons' supervisor became aware of Lyons' *romantic* involvement with Harvey Lyons. The latter factual issues, while tangentially relevant, are insufficient to defeat RRI's motion for summary judgment.

---

[7] In her affidavit, Lyons claimed that "[t]he [Colorado Civil Rights Division] intake form remained in the files which Red Roof Inn had access to and Red Roof Inn ultimately knew I was assisting Harvey Lyons." R., Doc. 26, Ex. 1 at 2, ¶ 7. Lyons failed to set forth specific facts to support this conclusory allegation, however. As a result, even if Lyons had been "actively helping [Harvey Lyons] with his lawsuit" and had "agreed to be a witness for him," *id.*, ¶¶ 5, 7, she failed to put forth specific evidence showing that RRI was aware of those facts at the time of her termination.

The judgment of the district court is AFFIRMED IN PART and REVERSED and REMANDED IN PART for further proceedings. [8] Lyons' motion requesting oral argument is DENIED.

Entered for the Court

Stephen H. Anderson
Circuit Judge

---

[8] In her opening brief, Lyons claims that the district court erred because it "did not address [her] wrongful termination claim." Aplt. Opening Br. at 3. To the extent that Lyons is referring to a state-law claim for wrongful termination, this argument is without merit, as Lyons' complaint does not contain any state-law claims. *See* R., Doc. 3. Moreover, the district court did address her claim that she was terminated in violation of Title VII.