FILED
United States Court of Appeals
Tenth Circuit

December 5, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

RODNEY K. TADLOCK,

      Plaintiff-Appellant,

v.

RAY LaHOOD, Secretary of the
Department of Transportation,

      Defendant-Appellee.

No. 13-3116
(D.C. No. 2:12-CV-02148-JAR-JPO)
(D. Kan.)

_____

**ORDER AND JUDGMENT***

_____

Before **KELLY**, **TYMKOVICH**, and **PHILLIPS**, Circuit Judges.

_____

Rodney K. Tadlock, proceeding pro se, appeals from the grant of summary

judgment in favor of the Secretary of the Department of Transportation, on his

employment claim under the Rehabilitation Act of 1973 ("Rehabilitation Act"). We

affirm.

---

\*     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I.    Background

Tadlock worked for many years as an air traffic control specialist for the

Federal Aviation Administration ("FAA"), which is a part of the Department of

Transportation,[1] at a traffic control center in Olathe, Kansas.  In November 2006, he

filed a formal charge against the FAA with the Equal Employment Opportunity

Commission ("EEOC") claiming discrimination on the basis of age and disability –

chronic sinusitis.

As pertinent here, the FAA has certain guidelines regarding the health and

safety of its air traffic controllers.  Other than innocuous medications, any medication

taken by an air traffic controller requires disclosure to FAA medical personnel.  And

medical procedures and events may require assessment by the FAA flight surgeon to

determine if an air traffic controller may still perform his work duties.  In January

2007, Tadlock had a surgical procedure to correct his sinusitis, and FAA medical

personnel cleared him to resume air-traffic-control duties.  In the aftermath of this

procedure, Tadlock developed a Cerebral Spinal Fluid ("CSF") leak from his nose.

He underwent treatment for it in March-April 2007 under the care of his surgeon.

Tadlock's surgeon submitted a report regarding Tadlock's health status and the CSF

leak to the regional FAA medical field office in Kansas, which was staffed and

managed by Constance Rudder, a nurse.  Rudder testified, however, that she did not

---

[1]    Although the FAA is not a named defendant, for ease of reference, we will
refer to the Department of Transportation and the FAA collectively as the "FAA."

notice the CSF notation when the report was received in April 2007, and she filed the record for review at a later time.

Months later, on October 16, 2007, Tadlock, who was working the evening shift, volunteered for a shift change to fill a shortage for a day shift on the following day. Manager Troy Price denied Tadlock's request. He testified that he was required to look internally at other day-shift controllers to fill the slot and that granting Tadlock's shift-change request would have necessitated overtime for the evening shift. Also in October 2007, Mary Ellen Loftus, regional counsel representing the FAA in Tadlock's 2006 EEOC charge, received a discovery request from Tadlock seeking certain medical records and documents in the FAA's possession. To respond to the discovery request, Loftus sought assistance from the FAA's regional flight surgeon, Larry Wilson, M.D., in November 2007. Wilson, in turn, sought assistance from Rudder.

According to Wilson and Rudder, it was not until November 2007, when they reviewed Tadlock's medical records to respond to his discovery request, that they first learned of the CSF leak.[2] In a letter dated November 15, 2007, Wilson asked Tadlock to provide medical records and information concerning his sinus problems and previous sinus surgeries, and a status report concerning his CSF leak. Tadlock

---

[2]     The record demonstrates that Wilson was deployed to the Middle East on military duty from April 2007 to September 2007.

refused to provide the requested medical records, stating the request was unreasonable in scope, but he indicated by letter that the CSF leak had stopped.

In early December 2007, Tadlock disclosed to Wilson that he had been placed on a prescription sleeping drug. As a result, Wilson informed Tadlock by letter dated December 3, 2007, and formally advised the traffic control center, that Tadlock was medically incapacitated – a temporary status – and could not perform safety-related duties until further notice. In a second letter dated December 11, 2007, Wilson advised Tadlock that he was still incapacitated. Wilson also clarified the scope of his previous request for medical documentation, asking for information concerning Tadlock's CSF leak, sleep medication, and chronic sinus condition. Wilson advised Tadlock that once the documents were received, Wilson could make a medical decision regarding Tadlock's incapacitation status.

Tadlock then submitted an application for retirement and was granted early retirement effective on December 28, 2007.

In January 2008, Tadlock filed a second charge against the FAA with the EEOC, this time alleging retaliation for his November 2006 EEOC charge. He filed the instant action pro se in March 2012, alleging three claims of retaliation under the Rehabilitation Act based on these acts: 1) denial of his October 2007 shift-change request; 2) request for medical records in November 2007; and 3) constructive discharge in December 2007. Tadlock exhausted his administrative remedies with respect to these claims of retaliation. The FAA moved for summary judgment on all

claims. Although Tadlock opposed the motion, the district court determined that many of the material facts set forth in the FAA's motion were deemed admitted for purposes of summary judgment because Tadlock failed to controvert those facts with admissible evidence as required by Fed. R. Civ. P. 56(c) and (e).

Because Tadlock's claims were based on circumstantial evidence, the district court analyzed the first two claims under the traditional burden-shifting analysis in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). It determined that Tadlock failed to establish a prima facie of retaliation for both claims. *See Reinhardt v. Albuquerque Pub. Schs. Bd. of Educ.*, 595 F.3d 1126, 1131 (10th Cir. 2010) (stating that prima facie case of retaliation under the Rehabilitation Act requires 1) the plaintiff engaged in protected activity; 2) the plaintiff suffered a materially adverse employment action; and 3) a causal connection between the protected activity and the adverse action exists). As to the denial of the shift-change request, the district court determined the denial did not constitute a materially adverse employment action because it did not affect Tadlock's job status, there was no objective evidence of material disadvantage, and the change was only subjectively preferred. *See McGowan v. City of Eufala*, 472 F.3d 736, 742-43 (10th Cir. 2006) (finding denial of shift change was not materially adverse). Tadlock also failed to establish a causal connection because there was no evidence that Price was aware of Tadlock's 2006 EEOC protected activity when Price denied the shift-change request. And even assuming a prima facie case was established, the court found the FAA

proffered a non-retaliatory reason for the denial, i.e., incurrence of overtime, and Tadlock failed to show the reason was pretextual.

Regarding Tadlock's second claim based on the November 2007 medical-records request, the district court determined Tadlock failed to show a prima facie case of retaliation because the request did not constitute a materially adverse employment action. *See Reinhardt*, 595 F.3d at 1133 (observing that "[a]cts that carry a significant risk of humiliation [or] harm to future employment prospects" may be adverse actions but a "mere inconvenience" will not suffice (internal quotation marks omitted)). The district court explained that the request was triggered by a discovery request during Tadlock's administrative case, the request itself did not materially change the terms or conditions of his employment, and the scope of the request – even if overly broad initially – was later narrowed.

Finally, regarding Tadlock's claim of constructive discharge, the district court found there was no genuine issue of material fact concerning whether Tadlock's working conditions were objectively intolerable. *See Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 534 (10th Cir. 1998) (stating that constructive discharge occurs when employer has made working conditions so "objectively intolerable" that "a reasonable person in employee's position would feel compelled to resign"). In doing so, the court rejected Tadlock's mischaracterization of his temporary medical incapacitation as a permanent medical disqualification that ended his career. It found there was no evidence, contrary to Tadlock's assertions, that Tadlock was ever

permanently disqualified.  It further found that Tadlock had a reasonable choice other than retiring – namely, working in an administrative capacity – until Wilson completed his medical investigation.

Accordingly, the district court granted the FAA's motion, and Tadlock now appeals.

## II.    Discussion

"We review a district court's grant of summary judgment de novo, applying the same standard as the district court."  *Helm v. Kansas*, 656 F.3d 1277, 1284 (10th Cir. 2011).  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  We view the summary judgment evidence "in the light most favorable to the non-moving party."  *Helm*, 656 F.3d at 1284. Because Tadlock is proceeding pro se, we construe his filings liberally, but we will not act as his advocate in constructing his arguments and searching the record.  *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

As we construe his brief, Tadlock largely disputes the entry of summary judgment on the ground that the district court relied on false evidence.  None of his arguments, however, creates a genuine issue of material fact.  Though not involving a claim of false evidence, Tadlock first asserts a "temporal proximity" argument.  Aplt. Opening Br. at 3.  He does not, however, specifically direct this argument to any of the three claims of retaliation that he administratively exhausted.  Instead, he begins

by citing a Ninth Circuit case holding that temporal proximity may by itself be sufficient evidence for a prima facie case of retaliation. *See Dawson v. Entek Int'l*, 630 F.3d 928, 937 (9th Cir. 2011). He then asserts that the FAA/Wilson disqualified him from his job three days after he reported a claim of retaliation to the Office of Civil Rights on November 30, 2007, and within eight hours of when he filed a charge with the EEOC on December 3, 2007.[3] *See* Aplt. Opening Br. at 3. He goes on to discuss actions by Wilson and then states that "the reason for Appellant's disqualification from his job is understood to be retaliation, since it happened within one business day of filing a complaint." *Id*. at 6. Accordingly, it appears Tadlock is relying on protected conduct that occurred in December 2007, which is not the protected conduct on which he relied in his EEOC charge. To the extent that Tadlock is claiming that Wilson's December 2007 letter deeming Tadlock medically incapacitated was itself retaliatory, the district court determined that such a claim was not administratively exhausted and that the court therefore lacked jurisdiction.[4] *See* R. Vol. II, at 19. Tadlock does not challenge this jurisdictional determination, so we will not address the merits of this claim.

Under the rubric of his temporal proximity argument, Tadlock also claims that "Wilson admitted that it was the [FAA] attorney who 'proposed' that he take some

---

[3]     The record shows that Tadlock made initial contact with the EEOC on December 3, 2007, but did not file a formal charge until January 15, 2008.

[4]     Although it concluded that it lacked jurisdiction over the claim, the district court also addressed the claim on the merits and denied it. We decline to do so.

action with respect to the controller who filed an EEOC complaint." Aplt. Opening Br. at 6. In support, he cites Wilson's testimony during the administrative phase of the case. We note first that Tadlock distorts that testimony. The record does not support, as Tadlock suggests, that Loftus instructed Wilson to take retaliatory action in response to the EEOC charge. Instead, the record demonstrates that Loftus only sought assistance from Wilson in responding to Tadlock's discovery request.

Second, although Tadlock's argument is unclear, to the extent that he means to challenge the district court's rejection of his retaliation claim based on Wilson's request for medical records, we perceive no error. As the district court accurately observed, Wilson's review of Tadlock's medical file and subsequent request for medical records was prompted by a discovery request that Tadlock made in the litigation of his 2006 EEOC charge. We agree with the district court that the medical records request itself was not a materially adverse employment action because the request did not materially change the terms or conditions of Tadlock's employment.[5]

Tadlock next argues that several parties committed perjury by submitting false statements to the district court. Specifically, he first claims that Price made false statements concerning 1) the need for overtime if Tadlock's shift-change request had been granted; and 2) his lack of knowledge of Tadlock's 2006 EEOC charge when he denied the shift-change request. *See* Aplt. Opening Br. at 3, 7. Although Tadlock

---

[5] As we previously noted, to the extent Tadlock is also claiming that Wilson deemed Tadlock medically incapacitated in response to his discovery request relating to his 2006 EEOC charge, that claim is not exhausted and we will not address it.

claimed that these were false statements in his response to the FAA's Statement of Facts in its motion for summary judgment, the district court deemed the statements admitted because Tadlock failed to rebut them with admissible evidence. We perceive no error. Tadlock's claims of false statements therefore failed to create a genuine issue of material fact with respect to his retaliation claim based on the denial of the shift-change request. Furthermore, we agree with the district court that the denial of Tadlock's shift-change request was not a materially adverse employment action. *See McGowan*, 472 F.3d at 743.

Likewise, we reject Tadlock's claim that Wilson and other medical staff committed perjury by falsely stating that they did not know of his CSF leak in the Spring of 2007. *See* Aplt. Opening Br. at 7. As with his other claims of perjury, Tadlock failed to properly rebut this evidence in his opposition to the FAA's motion for summary judgment.

As we construe Tadlock's next argument, he claims that the FAA has misled the district court with false claims concerning an FAA contract governing the employment terms, policies, and procedures for air traffic controllers such that the FAA obstructed justice. Tadlock failed to present this argument to the district court, and it is therefore waived. *See Cummings v. Norton*, 393 F.3d 1186, 1190 (10th Cir. 2005) ("[I]ssues not raised below are waived on appeal.").

Finally, Tadlock states several times in his brief that the case has not reached the discovery phase and requests that the case be remanded to commence discovery.

*See* Aplt. Opening Br. at 4, 6, 9, 10. In the district court, the FAA moved to stay discovery pending a ruling on its motion for summary judgment. It argued that thorough discovery had been completed during the administrative stage of the case. Tadlock did not respond to the motion. The district court granted the FAA's motion to stay discovery, but advised Tadlock that he could seek targeted discovery pursuant to Fed. R. Civ. P. 56(d). In opposing the FAA's motion for summary judgment, Tadlock argued that discovery should be permitted, but the district court denied his request because he did not comply with Rule 56(d) by submitting an affidavit explaining his need for discovery. *See Price ex rel. Price v. W. Res., Inc.*, 232 F.3d 779, 783 (10th Cir. 2000) (stating requirements under what is now Rule 56(d)). To the extent Tadlock challenges either denial of discovery, we have reviewed the matter for abuse of discretion and find none. *See Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 647 (10th Cir. 2008) (stating that discovery rulings are reviewed for abuse of discretion).

To the extent Tadlock otherwise challenges the entry of summary judgment on his claim of retaliation, we have reviewed the briefs, the record, and the applicable law and conclude that the district court accurately analyzed the issues.[6]

---

[6] Tadlock also refers to a Fed. R. Civ. P. 60(b) motion that he filed in district court. That motion is still pending in district court and is not properly before us.

### III.    Conclusion

The judgment of the district court is affirmed.[7]

Entered for the Court


Timothy M. Tymkovich
Circuit Judge

---

[7]    Volume III of the appellate record was filed under seal.  We issued a show cause order and have reviewed the parties' responses.  We direct the clerk of the court to redact Tadlock's birthdate from pages 31-34 of Volume III, and otherwise to unseal Volume III.